## SAUERWEIN *vs.* BRUNNER.—June, 1827.

A promissory note for $1,745, payable 90 days after date, made by B at the request of E, and for his accommodation, and by E taken to G, who endorsed it with E, and then delivered by G to M, who negotiated it with H for the sum of $1,648 08, which was paid to E, is void for usury

Where a note commences in usury; or in other words, where a note is tainted with usury at its birth, when it first becomes legally efficient and operative so as to give to the holder a right of action upon it, no subsequent holder, for a valuable consideration without notice of such usury, can maintain a suit upon it—such note being declared by statute null and void.

A note endorsed for the accommodation of the maker, and passed by him as a security for a usurious loan, is a usurious contract in its inception; as the lender is in fact to be considered the first holder of the note.

The terms to negotiate a note, import the passing it for money; and to pass a note for money, means to transfer such note to another proprietor.

APPEAL from *Baltimore* County Court. *Assumpsit* by the holder, (now appellant,) against the maker, (the appellee,) of a promissory note, payable to *George J. Brown,* and by him en=

dorsed to *Martin Eichelberger*, who endorsed it to the plaintiff. The case is fully stated by the judge who delivered the opinion of this court.

The cause was argued at the last June term, before BUCHANAN, Ch. J. and MARTIN, STEPHEN, and DORSEY, J.

*Mayer*, and *Cruse*, for the Appellant, contended, 1. That the time at which the instrument, on which this action is founded, became a complete and perfect note, was a question of fact for the jury, and not a question of law, and, therefore, that the court below erred in giving the directions prayed to the jury.

2. That if it be a question of law, yet, on the first delivery of the said note by its maker to *Martin Eichelberger*, the person for whose accommodation it was drawn, it became a complete and valid note.

3. That as no usurious consideration passed between any of the said parties at the time of said delivery, no subsequent usurious loan made on said note could vitiate it, and that it was therefore valid in the hands of a subsequent *bona fide* holder for a full and valuable consideration.

They cited *Parr vs Eliason*, 1 *East*, 92. *Dagnall vs Wigley*, 11 *East*, 42. *Daniel vs. Cartony*, 1 *Esp. Rep.* 274. *Foltz vs Mey*, 1 *Bay's Rep.* 486. *Barclay, qui tam vs Walmsley*, 4 *East*, 55. *Bowyer vs Bampton*, 2 *Stra.* 1155. *Lowe vs Waller*, 2 *Doug.* 735. *Young vs Wright*, 1 *Campb.* 139, 141. *Ackland vs Pearce*, 2 *Campb.* 599. *Lowes vs Mazzaredo*, 1 *Stark. Rep.* 385, *(2 Serg. & Low.* 438.) *Wilkie vs Roosevelt*, 3 *Johns. Cas.* 66. *Jones vs Hake*, 2 *Johns. Cas.* 60. *Bennett vs Smith*, 15 *Johns. Rep.* 355. *Churchell vs Suter*, 4 *Mass. Rep.* 156. *Powell vs Waters*, 17 *Johns. Rep.* 181. *Marvin vs M'Cullum*, 20 *Johns. Rep.* 288. *Durham vs Dey*, 13 *Johns. Rep.* 40. *Munn vs The Commission Company*, 15 *Johns. Rep.* 44. *Smith vs Beach*, 3 *Day's Rep.* 268. *Ellis vs. Warn*, *Cro. Jac.* 33. *Burt vs Gwinn*, 4 *Harr. & Johns.* 507. *Jones vs Davison*, 1 *Holt's Rep.* 256, *(3 Serg. & Low* 92.)* *Lucas vs Latour*, 6 *Harr. & Johns.* 100.

*Mitchell, R. B. Magruder*, and *Kennedy*, for the Appellee, cited *Lowe vs Waller*, 2 *Doug.* 736. *Nevison vs Whitley*, *Cro.*

*Car.* 501. *Booth vs Cooke,* 1 *Freem.* 264. *Parr vs Eliason,* 1 *East,* 92. *Heylyn vs Adamson,* 2 *Burr.* 676. *Ackland vs Pearce,* 2 *Campb.* 599. *Munn vs The Commission Company,* 15 *Johns. Rep.* 44. *Powell vs Waters,* 17 *Johns Rep.* 176. *Marvin vs M'Cullum,* 20 *Johns. Rep.* 288. 2 *Stark. Evid.* 250. *Chitty on Bills,* 78, *(and notes.) Lansing vs Gaine,* 2 *Johns. Rep.* 303, 304. *Lowes vs Mazzaredo,* 2 *Serg. & Low.* 438. *Jones vs Davison,* 3 *Serg. & Low.* 99, *(note.) Webber vs Maddocks,* 3 *Campb.* 1. cited in *Chitty on Bills,* 132, b. 1 *Stark. Evid.* 414. *Bank of Utica vs Wager,* 2 *Cowen's Rep.* 763. *New-York Fire Insurance Company vs Ely, Ib.* 705, 706, 707. *Chitty on Bills,* 105, *(note.)* 100, *(note 5.) Tyson vs Richard,* 3 *Harr. & Johns.* 111.

*Curia adv. vult.*

STEPHEN, J. at this term, delivered the opinion of the court. On the trial of this case in the court below, the plaintiff, (now appellant,) gave in evidence the following promissory note: *"Baltimore,* Feb'y. 26th, 1819. Ninety days after date I promise to pay *George J. Brown,* or order, seventeen hundred and forty-five dollars, and twenty cents, for value received;" which note was signed by the defendant, (the appellee,) and was endorsed by *George J. Brown, Martin Eichelberger,* and the plaintiff, and proved the handwriting of the maker and endorsers respectively; and further proved, that the said promissory note was passed *bona fide,* and in the due course of trade, and for a valuable consideration, into the hands of the plaintiff; and here the plaintiff rested his case. Whereupon the defendant called *Martin Eichelberger,* whose name is on the note, who being released, was admitted to be a competent witness, who testified, that having been pressed for money, at the time this note was made, he applied to the defendant to lend him, for his sole accommodation, the defendant's note, to be negotiated in order to raise money for his use. He further proved by said witness, that the defendant complied with his request, and that he the witness applied, with the note, to *George J. Brown,* for a loan of money, which *Brown* agreed to make him upon the said note, and did accordingly lend the witness cash to the amount of $1,648 08, which was all that he ever

received for or on account of the said note. That *Brown* deducted for the use of the money loaned, $97 12, which the witness and *Brown* then understood to be the discount for interest, and for no other purpose.   On being cross examined, the witness further said, that the note was drawn in blank, without the name of the payee inserted in it, when he passed it to *Brown*, having first inserted his name .as payee, and that he considered *Brown* as the lender of the money, and not as his agent to procure a loan for him on the note, for a commission. That the note was first negotiated for the purpose of raising money at usurious interest, and that the above mentioned sum of $1,648 08, was paid by *Brown* to him, a few days after he had delivered the note to *Brown*.

The plaintiff then produced as a witness, *George J. Brown,* who testified that he had no recollection whatever of the said note, on which this suit was brought, other than from his name being endorsed thereon in his own handwriting; that he had no recollection of having discounted said note, or any other of said *Brunner's* notes, at usurious interest, his pecuniary affairs being then much embarrassed, so that he was compelled to scrape together all the means in his power for his own use; that he has discounted *Brunner's* note at bank for the use of the said *Eichelberger,* and that from his embarrassed situation at that time his memory might have been very inaccurate.   The defendant then offered *John McFadon,* a competent witness, who stated that he did not particularly recollect the note in question, but that the memorandum, then shown to him, was in his handwriting, that it corresponded precisely with the note, and that he believes it related to that identical note.    That the money mentioned in the memorandum, he remembered having received from one *Heidleback,* who paid it to him after deducting the usurious rate of interest, mentioned in the memorandum, and that he carried the money to *Brown,* and gave it to him with the memorandum.    Whereupon the defendant prayed the direction of the court to the jury, that if the jury believed that the note in question was made for the purpose of raising money for the accommodation of *Martin Eichelberger,* and without any value being received by *Andrew Brunner,* and that it was passed by *Martin Eichelberger* to *George*

*J. Brown*, at a usurious rate of interest, then it was void, even if it passed afterwards, into the hands of a *bona fide* holder, and the plaintiff is not entitled to recover. And the defendant also prayed the court to direct the jury, that if they should believe that the said note was made by *Brunner* without consideration, for the accommodation of *Martin Eichelberger*, and by him was put into the hands of *George J. Brown*, that he might procure a loan of money thereon for said *Eichelberger*, and by *George J. Brown* was accordingly negotiated, to raise money, and that the sum of $1648 08 only, was raised thereon by *George J. Brown*, and paid over by him to *Martin Eichelberger*, then the plaintiff is not entitled to recover, notwithstanding he was not the lender of the money, but a subsequent holder for a valuable consideration, without notice of such previous usury. And the defendant further prayed the direction of the court to the jury, that if the jury should believe that the note was made by *Brunner*, without consideration, for the accommodation of *Martin Eichelberger*, and by *Martin Eichelberger* was put into the hands of *George J. Brown*, without any value paid therefor by *Brown*, that he might procure a loan of money thereon for *Martin Eichelberger*, and by *George J. Brown* was put into the hands of the aforesaid *John M'Fadon*, a broker, to negotiate to any purchaser, for the purpose aforesaid, who negotiated the same at a discount of $97 12, to one *Heidleback*, who became the first holder thereof for value, and that the proceeds thereof, after deducting the interest aforesaid, and his own commission as broker, was paid over by said *M'Fadon* to *George J. Brown*, who paid the same over to said *Eichelberger*, that then the said note was usurious and void in its inception. and the plaintiff not entitled in law to recover, notwithstanding the jury should be satisfied that he was not the lender of the money, but a subsequent holder for a valuable consideration, without notice of such previous usury. Upon these several prayers, the court *(a)* gave the instructions prayed for; and the plaintiff excepted. And the question to be decided by this court is, whether there is error in any of the opinions given by the court below? Upon an examination of the authorities relative to this subject, the principle seems

*(a.)* *Archer*, Ch. J. and *Hanson* and *Ward*, A. J.

to be well settled, that where a note commences in usury; or, in other words, where a note is tainted with usury at its birth, when it first becomes legally efficient and operative, so as to give to the holder a right of action upon it, no subsequent holder, for a valuable consideration, without notice of such usury, can maintain a suit upon it—such note being declared by statute null and void.    In M*unn vs The Commission Company,* 15 *Johns. Rep.* 55, *Spencer,* Justice, in delivering the opinion of the court, says "the true test, in distinguishing between a case, where the discount of a bill, at a higher premium than the legal rate of interest, will be deemed legal, by considering it the purchase of a perfect bill, and where it will be illegal, as a usurious loan of money, is to ascertain whether the bill was a perfect and available bill to the party holding it." He says "the principle is too well settled to be questioned, that a bill, free from usury, in its concoction, may be sold at a discount, by allowing the purchaser to pay less for it, than it would amount to at the legal rate of interest, for the time the bill has to run. The reason is obvious; as the bill was free from usury, between the immediate parties to it, no after transaction with another person can, as respects those parties, invalidate it. And I take it to be equally clear, that if a bill, or note, be made for the purpose of raising money upon it, and it is discounted at a higher premium than the legal rate of interest, and where none of the parties whose names are on it, can, as between themselves, maintain a suit on the bill when it becomes mature, provided it had not been discounted, that then such discounting of the bill would be usurious, and the bill would be void." This principle is also recognized and adopted by the court in *Powell vs Waters,* 17 *Johns. Rep.* 181.

The note in question was made by *Brunner* for the accommodation of *Eichelberger,* and no right of action ever grew out of it, or attached upon it, in favour of any holder, until it was discounted at a usurious rate of interest, either by *George J. Brown,* according to the statement of facts upon which the first prayer to the court was founded; or according to the statement contained in the second prayer, until it was discounted at illegal interest by the person to whom *Brown* applied as the agent of *Eichelberger;* or according to the statement of facts

contained in the third prayer, until it was discounted at unlawful interest by *Heidleback*, through the agency of *Brown*, for the benefit of *Eichelberger*.  *Wilkie vs Roosevelt*, 3 *Johns. Cases*, 66.

It has been contended, that the facts upon which the *second* prayer was made to the court, if true, do not prove the contract to be illegal and usurious.   That prayer is in the following words: "That if the jury should believe that the said note was made by *Brunner*, without consideration, for the accommodation of *Martin Eichelberger*, and by *Martin Eichelberger* was put into the hands of *George J. Brown*, that he might procure a loan of money thereon for *Martin Eichelberger*, and by *George J. Brown* was accordingly *negotiated* to raise money, and that the sum of $1648 08 only was raised thereon by *George J. Brown*, and paid over by him to *Martin Eichelberger*, then the plaintiff is not entitled to recover, notwithstanding he was not the lender of the money, but a subsequent holder for a valuable consideration, without notice of such previous usury."   If the note was negotiated by *George J. Brown*, and the sum of $1648 08 only, was raised thereon, it certainly shows that the transaction was an usurious one.   What is the import or meaning of the terms "to negotiate a note?"   According to the meaning given to them by lexicographers, they import the passing a bill or draft for money, and that to pass a bill or draft for money, means to transfer such bill or draft to another proprietor.   The prayer then in substance was, that if *George J. Brown* transferred *Eichelberger's* entire interest in this note, amounting to $1745 20, payable ninety days after date, and only raised by such transfer the sum of $1648 08, then the plaintiff was not entitled to recover.   Can it for a moment be contended that such a dealing between the parties does not present a case of usury?

A note endorsed for the accommodation of the maker, and passed by him as security for an usurious loan, is an usurious contract in its inception, as the lender is in fact to be considered the first holder of the note.   This principle is established in *Jones vs Hake*, 2 *Johns. Cas.* 60.   The judge who delivered the opinion of the court, makes the following remarks: "The note in question was made by *Watkins*, and endorsed by the

persons whose names appear on it, for the accommodation of *Watkins* alone. No money was paid, or value given, by any of the endorsers. If the transaction be viewed in its true light, it was a contract made through the agency of *Haskin,* (who was a money broker,) between *Watkins* on the one part, and the person who loaned the money, and took the note as his security, on the other. The lender was in reality the first holder of the note, for the value given, whatever that may have been." He then says, "There can be no doubt, but that the contract was usurious, and the note therefore void."

    DORSEY, J. dissented in part.

JUDGMENT AFFIRMED, <i>(a.)</i>

    *(a.)* The rule that a negotiable instrument, which commenced in usury, is void, even in the hands of a *bona fide* holder, has been qualified by the act of 1824, *ch.* 200, which declares that nothing in the usury act of 1704, shall "destroy the right to sue and recover, by any legal or equitable assignee, endorsee, or holder of any bond, bill obligatory, bill of exchange, promissory note, or other negotiable instrument." Such persons having "received the same for a *bona fide* and legal consideration, without notice of any usury in the creation or subsequent assignment or negotiation thereof."