# IGLEHART *v.* HOLT.


## KIDD *v.* HOLT.


### DISTRIBUTION OF INTESTATES' ESTATES.

1. In the distribution of the personal estate of an intestate, who died
   leaving no widow, and no child or descendants, father or
   mother, brother or sister surviving him, but leaving nephews
   and nieces, the children of deceased brothers and sisters, the
   nephews and nieces take *per stirpes* and not *per capita*, under
   the Act of Assembly of Maryland of 1798, Ch. 101, Secs. 8–11,
   which is in force in this District.
2. In such a distribution, a grandnephew of the intestate, the son of
   a nephew who died during the lifetime of the intestate, takes
   nothing under that act.

Nos. 722 and 723. Submitted November 18, 1897. Decided January 4, 1898.

HEARING on two appeals from an order of the Orphans'
Court directing partial distribution of an intestate's estate.
*Affirmed.*

The COURT in its opinion stated the case as follows:

The record before us presents two appeals, both from the
order of the court below of the 30th of June, 1897, directing
distribution of part of the personal estate of the late Judge
Advocate General, Joseph Holt, deceased.   Joseph Holt
died in this District, intestate, in the year 1894.   He left
no widow, child, parent, grandchild, brother or sister sur-
viving him; but he left nephews and nieces, children of
deceased brothers and sisters, and one grandnephew, the
child of a deceased nephew.   The questions of claim of dis-
tribution as among some of these parties are conflicting, as
presented and prayed for by their separate petitions.

Joseph Holt, the intestate, had two brothers and one
sister, who died in his lifetime, leaving issue.   His brother

Thomas Holt, left a son, Washington Holt, who survived the intestate, and is still living. His sister, Mrs. Elizabeth Sterett, left two children, William G. Sterett and Margaret Bowmer, who are still living; and his brother Robert Holt, left John W. Holt, Robert S. Holt, Thomas Holt, James J. Holt, Joseph I. Holt, Lockie Iglehart and Sarah Holt, his children, and of these Joseph I. Holt died in the lifetime of the intestate, leaving a son Joseph H. Holt, a minor, the grandnephew of the intestate Joseph Holt, sen.

Upon the application of the surviving children of the brother, Robert Holt, deceased, distribution of the part of the personal estate ready for distribution was asked to be made among the surviving nephews and nieces of the intestate, *per capita*, and not *per stirpes*; and there being but two other nephews and one niece standing in the same relation to the intestate, the interest of the petitioners, nephews and nieces, the issue of one brother, would be considerably increased by a *per capita* distribution, instead of a distribution *per stirpes*, by the reduction of the distributions that would be made to the one nephew, the only child of one brother, and the nephew and niece, the children of the sister of the intestate, according to a *per stirpes* distribution.

The grandnephew, Joseph H. Holt, by his guardian, also made application for a distribution by which he might be allowed to participate, and he claims that the estate for distribution ought to be divided into ten parts, and distributed, one-tenth to each of said surviving nephews and nieces of the intestate, and that the petitioner ought to be allowed to stand in the place of his father, Joseph I. Holt, deceased, and take one-tenth part of the fund. But if not so, then he claims that the estate ought to be divided into three parts, one to each of said stocks, the two brothers and one sister; and of the one-third part allotted to the children of Robert Holt, a deceased brother of the intestate, one-seventh thereof ought to be distributed to the petitioner, who is entitled to stand in the place of his father, Joseph I. Holt, deceased.

in respect to such distribution. The son of Thomas Holt, deceased, and the two children of Mrs. Sterett, contend for distribution *per stirpes*; but, of course, they have no interest in, and take no part in resisting the claim and contention of the grandnephew, Joseph H. Holt, if that claim be confined to the one-seventh of the one-third of the fund for distribution.

The case below, presented on the two petitions, was heard by Mr. Justice Hagner, and, in a very clear and able opinion, he held that the sum then for distribution, should be distributed *per stirpes*; one-third to the child of Thomas Holt, a deceased brother of the intestate; one-third to the children of Mrs. Sterett, the deceased sister of the intestate, and the remaining third to the surviving sons and daughters of Robert Holt, a deceased brother of the intestate; and that Joseph H. Holt, the grandnephew of the intestate, and minor son of Joseph I. Holt, deceased, was not entitled to share in the distribution in any manner; and a decree was made accordingly. And it is from that decree that the two separate appeals have been taken; the one by the surviving children of Robert Holt, deceased, and the other by or for his grandson Joseph H. Holt, son of Joseph I. Holt, deceased.

*Mr J. E. Iglehart* for the appellants Iglehart and others:

1. The act of Maryland of 1798 was substantially a re-enactment of the act of 1715, which was a copy of the act of Charles II, known as the English Statute of Distributions. A comparison of the acts of 1715 and 1798 will show that the act of 1798, like most American statutes, though not using the general term "next of kin," in its specification of classes and the method of their taking, follows and incorporates into the express statute the construction of the English statute as fixed in the English cases. That the act of 1798 continues in force the law as it stood previously, see *Seekamp* v. *Hammer*, 2 H. & G. 9 : *Greenfield* v. *Beckett*, 2 H. & G. 11.

2. The rule is, where an act declares a general intent, preferring one construction, and a particular intent preferring another, the latter shall be construed to be an exception. This rule solves the question of doubt here in our favor. *Stockett* v. *Bird,* 18 Md. 488. Construction of both sections (8 and 9) should be consistent. *Alexander* v. *Northampton,* 5 Md. 478. This rule is particularly applicable, as in section 8 the two classes take in their own right, and this is the general rule (29 Am. & Eng. Encyc. L. 420; *Knapp* v. *Windsor,* 6 Cush. 157; 24 Am. & Eng. Encyc. L. 389; *Cox* v. *Cox,* 44 Ind. 368), while representation among brothers' and sisters' children in section 9 is an exception introduced by Justinian to prevent their exclusion. Cross on Succession, 67.

3. There are only two modes of taking in distribution or descent: First, in one's own right; Second, by representation. Reeves on Descent, xxxviii. The subject-matter of the act (Sec. 9, last clause) is "representation among brothers' and sisters' children." Taking the definition, reason and origin of this doctrine, it means where there are two classes living. This interpretation of the language is justified under the authorities and text books cited; also by the decided cases more directly bearing on the point. *Hatch* v. *Hatch,* 21 Vt. 450; *Davis* v. *Stinson,* 53 Me. 493; *Brown* v. *Brown,* 6 Bush (Ky.), 640; *Van Cleve* v. *Van Fassen,* 73 Mich. 342; *Cox* v. *Cox,* 44 Ind. 368; *Knapp* v. *Windsor,* 6 Cush. 156; *Garret* v. *Bean,* 51 Ark. 53.

4. No change in the old law is presumed, especially as the act only repeals those acts in conflict or inconsistent with it. See title of act of 1798. The objection there indicated does not apply to representation. The preamble or title, where the act is obscure, is the "key to construction." The contrary is presumed, viz., no change was intended. The courts will compare the new law with the old to see if the changes in language mean a change of sense, especially. in revisions. *Rathbone* v. *Hamilton,* 9 App. D. C. 486; *Steamship* v. *Joliffe,* 2 Wall. 450.

Section 9 does not clearly indicate an intention to change the law as it stood previously, and it does not in express terms, or by necessary implication, provide for distribution *in stirpes* throughout. It must do both. *Seekamp* v. *Hammer*, 2 H. &|G. 9; *Greenfield* v. *Beckett*, 2 H. & G. 11, note *a*; *Knapp* v. *Windsor*, 6 Cush. 156; *Cox* v. *Cox*, 44 Ind. 378; *Hopper* v. *Hopper*, 1 Zab. 543; *Hatch* v. *Hatch*, 21 Vt. 450.

The statute does not in section 9 in express terms provide representation throughout as in section 6, among the lineal descendants. This can only be determined by construction, as was done in *McComas* v. *Amos*, 29 Md. 120. And it must appear by necessity, where there is only one class named in section 8 as taking in its own right. *Knapp* v. *Windsor, supra*.

5. A comparison of the act of 1715 with the act of 1798 shows that brothers and sisters as a class, and, in case of their death, their children as a class, in substitution for them, take under the act of 1798 just as they took under the the act of 1715. They take as a class presumptively in their own right. This is the meaning of section 8. Section 8, as to the classes named in it, is a reenactment of the act of 1715 as to both classes, with the modifications in their favor, viz.: 1. Class 1 (brothers and sisters) are preferred to others of equal degree. 2. Class 2 (brothers' and sisters' children) are also preferred, but are preferred as a class, and the members of each class take in equal degree. See *In re Merrick's Trust*, L. R. 1 Eq. 551, as to effect of substitution in separating classes.

The practice in the District follows the act of 1715, adopts the use of the term next of kin. It is used to indicate those who take under the statute in legal forms, publications, etc. It is the interpretation generally by the courts and the bar that the next of kin take under the act of 1798 (as they did under the act of 1715), and that the exceptions to such rule never changed the practice. The term "next of kin" is applied several times to the parties in this case in *Sterett* v. *Trust Co. et al.*, 10 App. D. C. 131.

*Crawford* v. *Crawford*, 22 Md. 465, and *Wilson* v. *McCarty*, 55 Md. 283, decide that the Orphans' Court have authority to determine who are the next of kin for purposes of distribution.

It will be seen, upon a comparison of the acts of 1715 and 1718, that while the latter act requires a careful specification of classes in order to make a few changes in the latter act, notably preference to grandchildren over the father, where he was next of kin, and a preferance to brothers and sisters and their children (Sec. 8) over other next of kin in the same degree, yet when the specification is made, those named in section 8 take under the act of 1798 as classes, just as they took under the construction by the English courts of the term "next of kin" in the act of 1715, where only brothers and sisters or their children survived.

6. There is a distinction between next of kin embracing all classes, and one class of equal degree named in a statute, but in each case they take in their own right.    2 Blackstone, 517; *Cox* v. *Cox*, 44 Ind. 368.    Persons named as a class take equally.    This is a general rule.    29 Am. & Eng. Encyc. L., 420; 2 Jarman on Wills, 634, 757; *Fletcher* v. *Fletcher*, 9 L. R. Qr. 301–8; *Cunningham* v. *Murray*, 1 De G. & S. 366; *Murray* v. *Murray*, 3 Ir. Ch. Rep. 120; *Crossley* v. *Clare,* Ambl. 397; *Knapp* v. *Windsor*, 6 Cush. 157; *Northey* v. *Strange*, 1 P. Wms. 342 ; *Blackler* v. *Webb*, 2 P. Wms. 383; *Rowland* v. *Gorsuch*, 2 Cox Ch. Cas. 189; *Ward* v. *Stowe*, 2 Dev. N. C. 509.    The exception is representation; where there is nothing to indicate representation, they always take in their own right.    2 Vernon, 705; 3 Vesey, 260, note ; 1 P. Wms. 343; 4 Pick. 210; 1 Simons, 167.    Representation among collaterals, in its nature and origin, is an exception.    Cross on Succession, 67.

Section 8 should also be construed separately and fully. *Davis* v. *Stinson*, 53 Me. 493.    Section 8 is the Statute of Distribution.    Section 9 is a mere direction.    29 Am. & Eng. Encyc. L. 420.    The doctrine of substitution found in section 8

renders necessary the modifications or provisions of section 9. Substitution underlies all distribution and descent where priority of classes is fixed in the statute. *Cox* v. *Cox*, 44 Ind. 368; *In re Merrick's Trusts*, L. R. Eq. Cas. 551. In section 8, class 1 (or in case of their death, class 2), takes the whole. "Or" is the simplest form of substitution. Theobald on Wills, Ch. 22; 2 Jarman on Wills, 5th Am. Ed. 93. "Or" means in case of death of. *Salisbury* v. *Petty*, 3 Hare, 86. Under the doctrine of substitution, the question arises, are the classes mutually exclusive? 2 Jarman on Wills, 5th Am. Ed. note p. 746. The general rule on the death of class 1, is to substitute class 2.

There is clearly necessity for a modification or qualification of section 8 here, which is made in section 9 in harmony with the meaning of section 8, consistent with substitution of class 2 for class 1, and in accordance with the law of 1715 continued in force. The rule as to class 1 is, all should be equal. *Houston* v. *Davidson*, 45 Ga. 574. And this, whether part are dead or not. The first clause of section 9 provides for this. Class 2 should not take in competition with class 1. Such is the effect of the last clause of section 9. *Powell* v. *Powell*, 28 Law Times, 730; *Johnson* v. *Cope*, 5 Bligh, 565.

8. Thus the law of 1715 is substantially reenacted here as elsewhere in the act of 1798. This means: 1. Equality to members of each class named in section 8, as in act of 1715. 2. Substitution according to section 8, and consistent with it. 3. Representation among brothers' and sisters' children in section 9. No other construction can produce this result. No other construction is consistent with the general rule of "representation among brothers' and sisters' children," as shown in its origin. Cross on Succession, p. 67. As shown in the definition and reason of the rule of such representation. *Knapp* v. *Windsor*, 6 Cush. 156; 24 Amer. & Eng. Encyc. L., title "Succession," 389.

9. The construction claimed by us is the only one under which the whole act stands without violating any of the

canons of construction. The only support to the opposite view in reason or authority for indefinite representation is the necessity for the support of primogeniture and preference to males under the feudal system, which has been repudiated by Parliament in the English Statute of Charles II, and by the American common law. *Stewart, Lessee,* v. *Jones,* 8 G. & J. 26; *Southgale* v. *Annan,* 31 Md. 117; *Barnitz* v. *Casey,* 7 Cranch, 465; *Mayor* v. *Williams,* 6 Md. 364. Especial attention is called to the acts of 1719 and 1729, as under the form of proceeding there pointed out the appellants and appellees here, if claiming under that act, would take *per capita,* as they always took before 1798, if the meaning given by the legislature to the words is adopted; and this is the law of the District today, and these acts must here be construed in *pari materia* with the act of 1798. The Federal courts of the District and the Supreme Court of the United States are not bound by the construction of Maryland statutes by the Court of Appeals of Maryland, where they are of opinion that such construction is erroneous, or where any reason not applicable here may have controlled or influenced that court. *Alexander* v. *Worthington,* 5 Md. 478; *Cathcart* v. *Robinson,* 5 Pet. 280; *Thaw* v. *Ritchie,* 5 Mackey, 201; *Starkey* v. *Inglehart,* 9 Mackey, 155; *Carroll* v. *Carroll's Lessee,* 16 How. 275.

10. The origin and doctrine of representation in the collateral line, when considered, shows that while nephews and nieces "stand in the place of" their parents, they do not derive their rights from them, but always derive their rights from the intestate. Cross on Succession, 67.

Most of the States of this country, by statute, recognize the rule of distribution *per capita* among nephews and nieces, where there are none more nearly related to the intestate living; and the decisions of the courts of several of the States will be cited to show that the same apparent obscurity and same general terms, used in establishing representation under the Maryland statute, when used in

other statutes or in wills, do not contemplate distribution *per stirpes*, where only one class is living, but that the natural, fair and reasonable construction of the language used in the Maryland statute means distribution *per capita* where the collaterals are all of equal degree and next of kin to the intestate.    *Davis* v. *Stinson*, 53 Me. 495; *Cox* v. *Cox*, 44 Ind. 368; *Brown* v. *Brown*, 6 Bush, 240; *Van Cleve* v. *Van Fassen*, 75 Mich. 342; *Hatch* v. *Hatch*, 21 Vt. 450.

11. Section 8, act of 1798, when considered alone, means: (1.) Brothers and sisters as a class take first, and under the general rule and only fair rule of construction they would take *per capita*.    (2.) Children of brothers and sisters as a class take, not concurrently with brothers and sisters, but in substitution for them, in case of death; but where children take as a class, *i. e.*, where the class first named are all dead, then they take *per capita*, and to establish the opposite view there should be strong evidence of legislative intention to the contrary, other than the usual provision for representation in section 9.    Endlich on the Interpretation of Statutes, Sec. 38.    This, we think, is the fair meaning of section 8.

The spirit of the act of 1798, like the act of 1715, is equality among heirs, and especially among collaterals of equal degree, who form a class nearest of kin to the intestate.    This is the fair meaning of section 8 considered alone or sections 8 and 9 considered together, or compared to section 6 of the same act.    If we consider the entire act, the same conclusion is arrived at.

*Mr. Arthur G. Moseley* for the appellant Kidd:

1. Under the common law in force in England prior to the statute of 22 and 23 Charles II., which same common law has been imported here (*Morsell* v. *Bank*, 91 U. S. 359), representation was admitted among collaterals to the furtherest degree, and that without the aid of any statute.    The restrictive clause contained in the act of Charles II, which

reads, " No representation shall be admitted among collaterals after brothers' and sisters' children," did not create the right of representation, but merely limited it. The right of representation existed prior thereto, independent thereof, and was one of the best settled doctrines of the common law. *Fidler* v. *Higgins,* 21 N. J. E. 138; *Schenck* v. *Vail,* 24 N. J. E. 534.

This statute was the rule in Maryland until 1798, when the statute under which we live was adopted. A comparison of the two will enable us to detect the differences. One limits representation " after brothers' and sisters' children ;" the other, " after brothers and sisters and their descendants." These limitations can not be construed to mean the same thing.

Under the statute of Charles II. the rule in Maryland as well as in England had become fixed that grandnephews would not take in competition with nephews. The act of 1798 became a law, and, before it had been construed in this respect, was, in 1801, adopted as the law of the District of Columbia. Then in 1809, the Supreme Court of Maryland for the first time construed the act of 1798 to mean the same in this respect as the act of Charles II. *Robins* v. *The State,* 1 H. & G. 476, reported in note to *Duvall* v. *Harwood,* 1 H. & G. 476. This case, without any reasoning or investigation to sustain it, and against the plain reading of the statute, has become the foundation of the rule in Maryland that grandnephews do not take. *McComas* v. *Amos,* 29 Md. 132. These decisions, having been made by the Maryland court after the adoption of the statute of 1798 by Congress, are not binding upon the courts of the District nor any more persuasive than are the decisions of the courts of other States construing similar statutes. It is respectfully submitted that these decisions are erroneous, and section 8 of Subch. 11 should be construed as if it read: " If there be brothers or sisters, or children or descendants of brothers or sisters, the said brothers, sisters, or children, or descend-

ants of brothers or sisters shall have the whole." The terms "children" and "descendants" each being used in this section to express a different meaning can not and should not be construed by the court to be identical in meaning.

2. The following States have statutes similar to ours, and grandnephews are permitted to participate with nephews and nieces in each of them: Alabama (*Stallworth* v. *Stallworth*, 29 Ala. 77), Arkansas (*Garrett* v. *Bean*, 51 Ark. 53), Florida, Illinois, Indiana (*Blake* v. *Blake*, 85 Ind. 65; *Cox* v. *Cox*, 44 Ind. 368), Kentucky, Louisiana (*Ratcliffe* v. *Ratcliffe*, 19 Mastin, 335), Missouri (*Copenhaver* v. *Copenhaver*, 78 Mo. 55), Ohio (*Evans* v. *Fallin*, 9 Ohio, 327), Rhode Island (*Doball* v. *Field*, 9 R. I. 266), Pennsylvania (60 Pa. St. 380), Texas, Virginia (*Davis* v. *Rowe*, 6 Rand. 355). In no State except Maryland are grandnephews excluded except by the plain terms of the statute. See, also, 55 Conn. 324; *Preston* v. *Cole*, 64 N. H. 459; *Cromartie* v. *Kemp*, 66 N. C. 382.

*Mr. J. M. Wilson* and *Messrs. Worthington & Heald* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The questions presented by these appeals are mainly of mere statutory construction, and the learned justice below only followed the settled construction of the Maryland statute of 1798, Ch. 101, Subch. 11, in force in this District, as that statute has been construed by the Maryland Court of Appeals, and applied in the practical administration and distribution of decedent's estates, both in that State and in this District. The construction adopted has furnished, and, it has been supposed, settled an important rule of property; but if it be apparent, as contended by the appellants, that there is clear error in the construction heretofore adopted, it becomes the duty of this court to correct such erroneous construction, and settle the practice accordingly.

1. The first question is, whether the distribution among the surviving nephews and nieces of the intestate, under the statute, and as this case is presented, should be made *per capita,* as contended for by the surviving children of Robert Holt, deceased, or *per stirpes,* as contended for by the other nephews and niece of the intestate, and as decreed by the court below.

It is contended by the appellants, on the appeal of the surviving children of Robert Holt, deceased, that the principle of *per capita* distribution should have been applied whereby each of the surviving nephews and nieces of the intestate would be entitled to receive one-ninth of the fund for distribution, instead of *per stirpes* distribution, whereby the fund was primarily divided into third parts, and then, where there were more than one of such surviving children of the respective stocks, the third was divided among them *per capita.* And this contention is founded upon decisions, applying the principles of the Roman civil law, in the construction of the English statutes of distributions of 22 and 23 Charles II, Ch. 10, explained and modified by statutes 29 Charles II, Ch. 30, and 1 Jac. 2, Ch. 17. The celebrated statute of 22 and 23 Charles II, Ch. 10, passed in 1670, was largely copied from the 118th Novell of Justinian; and according to a statement made by Lord Chief Justice Holt, in *Pett's Case,* 1 P. Wms. 25; Salk. 250, the statute was drawn by Sir Walter Walker, a famous civilian, and the purpose was, as it would seem, to introduce the rules and principles of the Roman civil law into the English law of distribution of personal estate. The statute, however, gave rise to an immense amount of litigation before settled rules of construction were finally agreed upon by the courts, as the numerous cases found in the reports will show; and it was not until late in the last century that many of the doubts and difficulties in regard to questions arising upon the statute were settled in the English courts.

The statute of 22 and 23 Charles II, Ch. 10, deals sepa-
rately with the cases of descendants and the cases of next
of kin not descendants.   The case of children or lineal
descendants is provided for by the 5th section, and the case
of the next of kin, not being descendants, by the 6th and
7th sections.

In the case before us, there being no widow or descend-
ants of the intestate, we are concerned only with the col-
laterals of the deceased.   By the 6th section of 22 and 23
Charles II, it is provided that, "In case there be no children,
nor any legal representatives of them, then one moiety of
the said estate to be allotted to the wife of the intestate, and
the residue of said estate to be distributed *equally to every of
the next of kindred of the intestate who are in equal degree,* and
those who legally represent them."   And by section 7 it is
provided, "That there be no representations admitted among
collaterals *after brothers' and sisters' children;* and in case
there be no wife, then all the said estate to be distributed
equally to and amongst the children; and in case there be
no child, *then to the next of kindred in equal degree of or unto
the intestate* and their legal representatives as aforesaid, and
in no other manner whatsoever."

These sections have given rise to most of the questions
that have perplexed the English courts upon the subject of
distributions.   But without extending this opinion by refer-
ring specifically to the many English decisions, we may
state the result of them, by quoting a passage from Williams
on Executors and Administrators (4th Ed.), pages 1298–9, in
which the author says:

" The seventh section of the Statute of Distribution pro-
vides that there shall be no representations admitted among
collaterals after brothers' and sisters' children.   This provis-
ion must be construed to mean brothers and sisters *of the
intestate,* and not as admitting representation, when the dis-
tribution happens to fall among brothers and sisters, who
are remotely related to the intestate; for the intestate is the

subject of the act; it is his estate, his wife, his children, and for the same reason, his brothers' and sisters' children ; for he is equally correlative to all. Therefore, if the intestate should leave an uncle, and the son of another uncle deceased, the latter shall have no distributive share. So if the next of kin of the intestate should be nephews and nieces, *a child of a deceased nephew or niece will not be admitted to share in the distribution.* Again, it has been held, that if the brother of the intestate left a grandson, and a sister left a child, the grandson shall not have distribution with the son or daughter of the sister. Thus, although, as it has already appeared, lineal representatives, *ad infinitum,* shall share in the distribution of an intestate's personal estate, yet among collaterals, except only in the instance of the intestate's brothers' and sisters' children, proximity of blood shall alone give a title to it. If the intestate's brothers and sisters were, at the time of his decease, all dead, and having left children, such children *shall all take per capita.* Therefore, if an intestate leave a deceased brother's only son, and ten children of a deceased sister, the ten children of the deceased sister shall take ten parts in eleven with the son of the deceased brother. But in the event of some of the intestate's brothers and sisters being alive and some dead, and such as are dead having left children, such children take *per stirpes,* by way of representation. Therefore, if an intestate left a brother alive, and ten children of a deceased sister, such ten children will take one moiety of the personal estate, and their uncle the other." And to the same effect are the principles stated in 2 Kent's Commentaries, page 425.

The distinction in the application of the principles of the *per stirpes* and the *per capita* distributions, as allowed in the English law of succession and descents, is nowhere better or more clearly stated than in 2 Blackstone's Commentaries, page 217. The author, in explaining the fourth canon of descents, says: "This taking by representation is called succession *in stirpes,* according to the roots ; since all the

12 Ct. App.—7

branches inherit the same share that their root, whom they represent, would have done. And in this manner also was the Jewish succession directed; but the Roman somewhat differed from it. In the descending line the right of representation continued *in infinitum*, and the inheritance still descended *in stirpes*; as if one of three daughters died, leaving ten children, and then the father died; the two surviving daughters had each one-third of his effects, and the ten grandchildren had the remaining third divided between them. And so, among collaterals, if any person of equal degree with the persons represented were still subsisting, (as if the deceased left one brother, and two nephews, the sons of another brother), the succession was still guided by the *roots*; but, if both of the brethren were dead leaving issue, then (I apprehend) their representatives in equal degree became themselves principals, and shared the inheritance *per capita*, that is, share and share alike; they being themselves now the next in degree to the ancestor, in their own right, and not by right of representation. So if the next heir of *Titius* be six nieces, three by one sister, two by another, and one by a third; his inheritance by the Roman law was divided into six parts, and one given to each of the nieces; whereas the law of England in this case would still divide it only into three parts, and distribute it *per stirpes*, thus: One-third to the three children who represent one sister, another third to the two who represent the second, and the remaining third to the one child who is the sole representative of her mother."

And again, in the same book, in treating of title by testament and administration, at page 517, the author says:

"Before I quit the subject, I must, however, acknowledge that the doctrine and limits of representation laid down in the statute of distributions seem to have been principally borrowed from the civil law; whereby it will sometimes happen that personal estates are divided *per capita* and sometimes *per stirpes*; whereas the common law knows no other

rule of succession but that of *per stirpes* only. They are divided *per capita* to every man an equal share, when all the claimants claim in their own rights, as in equal degree of kindred, and not *jure representationis,* in the right of another person. As, if the next of kin be the intestate's three brothers, A, B, and C; here his effects are divided into three equal portions, and distributed *per capita* one to each; but if one of these brothers, A, had been dead, leaving three children, and another, B, leaving two, then the distribution must have been *per stirpes*; viz., one-third to A's three children, another to B's two children, and the remaining third to C, the surviving brother; yet, if C had also been dead without issue, then A's and B's five children, being all in equal degree to the intestate, would take in their own rights *per capita*; viz., each of them one-fifth part."

It thus appears that, by the terms, and the principles applied in the construction of the English statute of distributions, the right or privilege of representation among collaterals is expressly limited, and does not extend to any more remote descendants of brothers and sisters than their children, and does not apply at all to any case where the next of kin are all more remote than their brothers' and sisters' children. If, therefore, the case of the surviving nephews and nieces of the intestate, the children of the deceased brother Robert Holt, were to be decided according to the English statute of distributions, and as that statute has been expounded in the light of the civil law, there could be no doubt but that the distributions to the surviving nephews and nieces of the intestate, they all being in the same degree of kindred, would have to be made *per capita* and not *per stirpes*; and it is equally clear, that under the English statute, and the principles that have been applied in its construction, the grandnephew of the intestate, son of Joseph I. Holt, deceased, would not be entitled to share in the distribution.

But the English statute of distributions of 22 and 23

Charles II, was never in force in Maryland, as an English statute; at any rate, it was not in force there after the year 1715, if ever before that time; and that statute is not among those declared to be in force or in use in that State, by the third article of the Declaration of Rights of 1776. It is true, by the provincial Assembly of Maryland in the year 1715, a statute was enacted to stand in lieu of and as a substitute for the English statute of Charles II, containing substantially several of the provisions of the English statute, though not literally reenacted. By sections 4–6 of that provincial act it was provided that in case there be no children, nor legal representatives of them, the widow should have one moiety; and the rest be divided among the next of kin, in equal degree, and their legal representatives. But no representatives should be admitted among collaterals, after brothers' and sisters' children. And if there be no widow, then the estate should be equally divided among the children; and if no children, then among the next of kin in equal degree, or their legal representatives aforesaid. 1715, Ch. 39.

It does not appear that there was ever any judicial construction of that act made, apart from the construction by the English courts of the corresponding provisions contained in the statute of Charles II. But this act of 1715, and, all subsequent acts, both of the provincial and State legislatures, in force at the time of the passage of the act of 1798, Ch. 101, were superseded or repealed by the latter act. Prior to that time, the statute laws of the State, relating to testamentary and administration affairs of personal property, seem to have been in a state of doubt and confusion, and the legislature, to remove the difficulty, authorized or requested Chancellor Hanson, then the chancellor of the State, to prepare an act for amending, and reducing into system, the laws and regulations concerning last wills and testaments, the duties of executors and administrators, and the rights of orphans and other representatives of deceased per-

sons. It was thus that the act of 1798, Ch. 101, was prepared, and, upon submission to the legislature, was adopted. In the preamble to the act, it is recited that the preexisting laws were complicated and difficult to be understood, and were found to be greatly inadequate to the purpose for which they were intended. In the first section, it is declared, that every provision, rule or regulation, contained in any act of Assembly theretofore passed, or in any English statute introduced, used or practiced under, in the State, inconsistent with, or repugnant to, anything contained in the act of 1798, was thereby repealed and rendered utterly void and of no effect.

It is quite clear, therefore, that if either the English act of distribution of 22 and 23 Charles, or the provincial act of Maryland of 1715, contained anything inconsistent with or repugnant to the provisions of the act of 1798, Ch. 101, or the subjects of those prior acts were fully embraced within the provisions of the Act of 1798, the prior acts would be completely repealed and superseded; and that such prior acts, for the reason just stated, have been treated and regarded as repealed or entirely superseded by the act of 1798, is very satisfactorily shown, if it were not otherwise apparent, in 1 Kilty's Laws of Maryland, in a note to the titling of the act of 1715, Ch. 39, the act itself being omitted from the compilation.

It is clear, therefore, that the questions presented on the present appeals must be determined, according to what is adjudged to be the proper construction of the sections of subchapter 11, of the act of 1798, Ch. 101, prescribing rules for the distribution of intestates' estates.

The first three sections of this Subch. 11, direct the manner of distribution of the estate of the intestate where the latter leaves a widow; and the next three sections, 4, 5 and 6, direct the manner of distribution where the intestate leaves children surviving; and the seventh section directs distribution to the father of the intestate, if surviving, and

there be no child or descendant. Then it is declared as follows:

"8. If there be a brother or sister, or child or descendant of a brother or sister, and no child, descendant, or father of the intestate, the said brother, sister, or child, or descendant of a brother or sister *shall have the whole.*

"9. Every brother and sister of the intestate shall be entitled to an equal share, and the child or children of a brother or sister of the intestate *shall stand in the place of such brother or sister.*

"10. If the intestate leave a mother, and no child, descendant, father, brother, sister, or child or descendant of a brother or sister, the mother shall be entitled to the whole; and in case there be no father, a mother shall have an equal share with the brothers and sisters of the deceased, and their children and descendants.

"11. *After* children, descendants, father, mother, *brothers and sisters,* of the deceased, *and their descendants,* all collateral relations, in equal degree, shall take, *and no representation among such collaterals* shall be allowed; and there shall be no distinction between the whole and the half-blood."

As will be observed, it is not declared in the eleventh section just quoted, as in the English statute of distributions, "that there shall be no representations admitted among collaterals after brothers' and sisters' children;" but the declaration in the Maryland statute is, that after brothers and sisters of the deceased, *and their descendants,* all collateral relations *in equal degree* shall take, and no representations *among such collaterals* shall be allowed. The words "their descendants," as here used, and in respect to the right of representation, must be construed to mean children of brothers and sisters; and so construed, the exclusion of the principle of representation and the adoption of the *per capita* distribution can only be applied after brothers' and sisters' children, and not as under the English statute, where all the brothers and sisters are dead,

some leaving a less and some a greater number of children, such children, because standing in the same relationship to the intestate, take *per capita* each an equal share.   In such case the children of brothers and sisters, if no uncle or aunt be living, take *per capita* in their own right, as next of kin.   But not so with respect to the surviving children of deceased brothers and sisters of the intestate, under the Maryland statute of distribution; such surviving children, without regard to the fact that they may be the only next of kin of the intestate, take, not in their own rights each an equal share, but by way of representation of their deceased parents, each family of children taking the share to which their parent would have been entitled, if living.   This construction gives full force and effect to the ninth section of the statute, already quoted, which declares that every brother and sister of the intestate shall be entitled to an equal share, and the child or children of a brother or sister of the intestate *shall stand in the place of such brother or sister.*   But this section does not embrace grandchildren of a brother or sister of the intestate.

There is no difficulty in perceiving the difference in the terms and their collocation, and consequent difference in signification, between the language employed in the act of 1798, and that employed in the English statute of Charles II, and the provincial act of Maryland of 1715, in formulating the rules of distribution.   But we are urged, however, not to construe the language of the act of 1798 literally or strictly, but that we should take the terms employed by the legislature as intended to express the rules of distribution that had been deduced from the provisions of the English act of Charles II, construed according to the principles of the Roman civil law.   But to do this, we should have to interpolate into the statute several very important restrictive terms, and terms of classification, which the legislature has thought proper to omit.   The rules of construction that had been settled by the English courts, as

applied to the English statute of distribution, were well
known and understood by the authors of the act of 1798;
and if it had been intended to formulate those rules into
statutory provisions, apt and appropriate language for the
purpose would, doubtless, have been employed; or, at least,
the terms of the act of Charles II would have been adopted,
or such equivalent terms as would have left no doubt as to
the intention of the legislature. But the legislature did not
so deal with the subject. The terms of the statute are
general and unqualified, and declare that the child or
children of a brother or sister of the intestate shall stand in
the place of such brother or sister; and this declaration
constitutes an absolute right in such child or children. It
is only *after* brothers and sisters of the deceased, *and their
descendants*, that all other collateral relations, *in equal degree*,
are to take, and that no representation among such col-
laterals shall be allowed. Seeing how careful and particular
all conditions and relations of those who might become
entitled to distribution are designated, we can not resist
the conclusion that if it had been intended that nephews
and nieces should only take *per stirpes*, or stand in the place
of their deceased parents, where there was an uncle or an
aunt still living to take with them, that such condition
would have been made an exception to or qualification of
the general declaration that the child or children of a de-
ceased brother or sister shall stand in the place of their de-
ceased parent. And why should it not be so? It would
seem to be the most natural distribution to make in such
case; that the children should take what their parents would
be entitled to, if living; and the children of a deceased
parent cannot stand in his or her place, except by represen-
tation. If, in the partition or distribution of the real estate
of the intestate, the principle of representation would apply
in such case as this, why not to the distribution of the per-
sonal estate, to the same extent at least. Chancellor Kent
(2 Kent Com. 427) says, what is both true and reason-

able, that in a majority of the States the descent of real and personal property is to the same persons and in the same proportions; and this would seem to have been the state of the law in Maryland after the passage of the act of 1798; at least in applying the common law principle of representation in the distribution of an intestate's personal estate among collaterals, to the extent of allowing or prescribing the rule of representation without qualification, in all cases of distributions to nephews and nieces of the intestate. By the act of Maryland of 1786, Ch. 45, passed to direct descents of real estate, and which is in force in this District, the principle of representation was fully and unqualifiedly adopted, both as to the descending and collateral lines. By section 4 of that act it is declared, "that if in the descending or collateral line, *any* father or mother may be dead, the child or children of such father or mother shall, by representation, be considered in the same degree as the father or mother would have been if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled to, and no more; and in such case, where there are more children than one, the share aforesaid shall be equally divided among such children."

Having thus adopted the common law principle of representation for making division of the real estate of an intestate among collaterals, it is not at all remarkable that the doctrine of representation in regard to the distribution of personal estate of an intestate, was given a more extended and unqualified application than by the English statute of distributions, in respect of distributions to brothers' and sisters' children.

The question presented on the appeal of the children of Robert Holt, deceased, is not a new question. It was fully and elaborately argued by able counsel, and carefully considered by the Court of Appeals of Maryland, in the case of *McComas et al.* v. *Amos et al.*, 29 Md. 120. In that case, an intestate died leaving no widow and leaving no child or de-

scendants, father or mother, brother or sister, surviving him;
but left several nephews and nieces, the children of deceased
brothers and sisters, and also several grandnephews and grand-
nieces, whose parents had died in the lifetime of the intestate.
And upon that state of case it was held that the nephews
and nieces took *per stirpes* and not *per capita.* And it was
also held, as a necessary consequence of the application of
the *per stirpes* doctrine of distribution among the nephews
and nieces, that the grandnephews and grandnieces of the
intestate were not entitled to participate in the distribution
of the personal estate of the intestate.

Without further amplification, it is sufficient to say, that
upon the fullest consideration of this question, and all the
arguments and authorities presented for our consideration,
on this appeal, we have not been able to reach any other
conclusion than that arrived at in the case of *McComas* v.
*Amos*, and upon which the learned justice below mainly
rested his decision. We must, therefore, affirm the decree
appealed from by the children of Robert Holt, deceased,
awarding distribution *per stirpes* among the nephews and
nieces of the intestate, to the exclusion of the grandnephew,
Joseph H. Holt, the minor child of Joseph I. Holt, deceased,
a nephew of the intestate.

2. With respect to the appeal taken on behalf of Joseph
H. Holt, the minor grandnephew of the intestate, little need
be said. It follows from what we have already said in con-
sidering the appeal taken by the children of Robert Holt,
deceased, that the grandnephew in this appeal is not entitled
to share in the distribution of the personal estate of the
intestate with the nephews and nieces who take *per stirpes.*
That the father of Joseph H. Holt, the appellant, having
died in the lifetime of the intestate, he could not be included
among the surviving nephews and nieces and made to par-
ticipate in a *per stirpes* distribution, as that would have
lessened the distribution to them, and they are preferred
to those more remotely related to the intestate, such as the

grandnephew. He is neither entitled under the principle of distribution *per stirpes* nor *per capita*; neither according to the established construction of the English statute of distribution, nor according to the established construction of the Maryland act of 1798, Ch. 101, Subch. 11. This was judicially settled in Maryland in 1809, a few years only after the passage of the act of 1798, Ch. 101. The decision was made in the case of *Robins et al.* v. *State, use of Polk,* and though there was no written opinion delivered, yet the case is very clearly reported in a note to the subsequent case of *Duvall* v. *Harwood,* 1 H. & G. 474, 477; in which latter case a very able and learned court would not hear counsel argue against the previous case of *Robins* v. *Polk*; and in very plain and unqualified terms decreed in favor of the nephews and nieces of the intestate, and to the exclusion of the grandnephews and grandnieces of the intestate, they being children of a son or daughter of a brother or sister of the intestate, and which son or daughter had died before the intestate. These decisions have been regarded in Maryland as settling the question; and though the question was mooted in *McComas* v. *Amos,* it was not much pressed, the two cases in 1 H. & G. 477, being regarded by the court as conclusive. And while it may be a seeming hardship upon this grandnephew, yet there is no principle upon which he can be let in to share the distribution of the personal estate of his greatuncle. We must, therefore, affirm that part of the decree from which this appeal is taken.

*Decree on both appeals affirmed.*