FERDINAND P. LOBE et al. *v.* LAWRENCE W. GOLDHEIM.

*Construction of Will—Devise to Children's Heirs—Per Stirpes.*

The word "heirs" must, in the absence of language clearly indicating a contrary intention, be taken primarily in its legal and technical sense, as meaning all those who would be entitled by law to inherit in case of intestacy.          pp. 250-252

The use of other technical terms in a will, such as "give and devise," and "share and share alike," *held* to indicate an intention to use the word "heirs" in the will in its technical sense.

p. 252

A devise to the testator's children for their lives, and, after the death of the last surviving child, to the heirs of all his children, *held* to give the property to such heirs *per stirpes* and not *per capita.*          p. 252

*Decided June 8th, 1927.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Exceptions by Ferdinand P. Lobe and Harry G. Lobe to an auditors account, known as "Account A," distributing the estate of Lazarus Goldheim, deceased, and exceptions by Lawrence W. Goldheim to an alternative auditor's account. From an order overruling the exceptions to Account A and sustaining those to the alternative account, said first mentioned exceptants appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Julius H. Wyman,* submitting on brief, for the appellants.

*Morton P. Fisher,* with whom were *Fisher & Fisher* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

Lazarus Goldheim died in 1878, leaving a last will and testament, duly admitted to probate by the Orphans' Court of Baltimore City. The first item of the will is in the following language: "I give and devise unto my beloved wife a life interest in the property now occupied by me, on the north side of West Pratt Street, with all the appurtenances thereunto belonging or in any wise appertaining, and after the death of my said wife, it is my will, that the said property shall go unto all my children who may survive my said wife, for life; and after the death of the last survivor, then to the heirs of all my children absolutely." The record discloses that the testator left surviving him his wife and four children, all of whom are now deceased. There are living ten grandchildren, four of them the children of one of the testator's children, three the children of another such child, two the children of still another, and one the child of still another of the testator's children. In the distribution of the estate among these grandchildren, the auditor stated two alternative accounts; account "A" provides for a distribution of the

estate *per stirpes,* while account "B" distributes the same *per capita.* Exceptions were filed to both of these accounts. The chancellor ratified account "A" and sustained exceptions to account "B." From that action this appeal is prosecuted.

The question which we are asked to decide is whether, by the true construction of the first item of the will of Lazarus Goldheim, the absolute remainder, which has now vested in the ten grandchildren of the testator, passes to them *per stirpes* or *per capita.* A decision of this question turns upon the meaning given the word "heirs," as used by the testator in the item of his will above quoted. The general rule, supported by the great weight of authority, is that where the terms "heirs" or "heirs of the body" are used in a will or deed, without any other language changing or modifying their meaning, they are to be given their technical or legal sense. In 40 *Cyc.* 1459 it is said: "The word 'heirs' in a will primarily is used in its legal or technical sense, and, unless the context shows a contrary intention, must be construed as meaning all those who, in case of intestacy, would be entitled by law to inherit on the death of the testator or ancestor named." In 15 *Amer. & Eng. Encyc. of Law* (2nd Ed.), 320, the rule is thus stated: "The term 'heir' or 'heir of the body' has assigned to it by judicial determination its appropriate, peculiar, and technical import and meaning, and that import and meaning it is to receive unless there is something in the instrument clearly excepting it from this general rule, and showing that when used it was designed that this technical import should not be applied to it. In its legal import or signification it is not a word of purchase, nor a *designatio personae,* but *nomen collectivum,* and used as a word of limitation, and will carry the land devised or conveyed not only to the immediate heir or issue, but to all those who descend from the devisee or grantee." In *Guthrie's Appeal,* 37 Pa. St. 13, the court said: "When the term 'heirs' or 'heirs of the body' is used by a testator, the law presumes that he used it in their legal sense, that he intended not individuals but quantity of estate and descent. Whenever these terms are employed, therefore, the burden is thrown upon

him who contends that they are words of purchase, to rebut
this presumption and to show that they were used in the
particular grant or devise to designate persons." We find
the general rule also laid down in 9 *R. C. L.* 22, and 28
*R. C. L.* 223, 247; the last citation being: "The common law
technical meaning of the word 'heirs' is to designate the per-
sons who are entitled by law to succeed by inheritance to the
real estate of a decedent, namely those persons who are related
by blood and who would take his real estate if he died
intestate."

The general rule as above stated is supported by numer-
ous decisions of this Court. *Simpers v. Simpers,* 15 Md.
188; *Mitchell v. Mitchell,* 2 Gill, 236; *Horne v. Lyeth,* 4
H. & J. 435; *Clarke v. Smith,* 49 Md. 106; *Alder v. Beall,*
11 G. & J. 123; *Plummer v. Shepherd,* 94 Md. 466; *Sling-
luff v. Johns,* 87 Md. 273; *Levering v. Levering,* 14 Md.
31; *Requardt v. Safe Deposit Co.,* 143 Md. 431, at 436. In
the case of *Clarke v. Smith, supra,* Judge Alvey, speaking
for the Court, said: "It is a well settled rule of construction,
that technical words of limitation used in a devise, such as
heirs generally or heirs of the body, shall be allowed their
legal effect, unless from subsequent inconsistent words it is
made perfectly plain that the testator meant otherwise. Or,
to use the language of Lord Eldon, in *Wright v. Jesson,* 2
Bligh, 1, the words heirs of the body will indeed yield to a
particular intent that the estate shall be only for life, and
that may be from the effect of superadded words or any ex-
pression showing the particular intent of the testator, but
that must be clearly intelligible and unequivocal. This prin-
ciple is very clearly stated and adopted by this Court in
*Simpers v. Simpers,* 15 Md. 160, 187. It results from the
great necessity, always acknowledged by the courts, of adher-
ing to established rules of construction, in order to maintain
certainty and stability of titles."

From these authorities it is firmly established that the
word "heirs," when used as in the will now under considera-
tion, must be taken primarily in its legal and technical sense.

This rule does not apply, however, when the will contains language clearly indicating that it was the intention of the testator to use this technical term in a different sense. Many cases may be found where the primary technical meaning is held not to apply when a contrary significance is clearly and unequivocably indicated by the language employed by the testator. Uniformity of interpretation of such terms is essential in order that titles to real property may be made certain and secure. We find nothing in the will of Lazarus Goldheim to indicate that he intended the word "heirs," as used in the first item, to be construed other than in its legal and technical sense. If any inference on this point can be fairly drawn from the whole will, it is to the effect that he fully understood the technical meaning of the word "heirs." This is indicated by the use of other technical terms, such as, when he was disposing of real estate, using the term "give and devise"; and also, when making a *per capita* distribution, appropriate words indicating that distribution, such as "share and share alike," were employed.

While the record does not disclose who were the heirs of the testator's children, had they all died immediately after the testator, it is highly improbable that he should have had in mind any particular individual or class of individuals as constituting the heirs of his children. If one of the testa-tor's grandchildren had died leaving direct descendants prior to the death of the last surviving child of the testator, it could scarcely be contended that the great grandchildren of the testator should take equally with the grandchildren, yet the term "heirs" would as certainly include great-grandchil-dren as grandchildren of the testator.

Entertaining these views, we find no error in the chan-cellor's order appealed from, and the same must be affirmed.

*Order affirmed, with costs to the appellee.*