ISAAC CATE LYCETT ET AL. *v.* WIDGERY THOMAS
ET AL.

*Deed of Trust—Construction—Per Stirpes Clause.*

Where there is a gift to a class, members of the class take
*per capita,* unless a contrary intention clearly appears.     p. 446

In a provision in a deed of trust that, in case of the death of
a named beneficiary without descendants, his share should be
divided "among his nephews and nieces then living, and the
descendants then living of any deceased nephews or nieces, *per
stirpes,"* the words *"per stirpes"* applied only to the descendants
of deceased nephews and nieces, making the nephews and nieces
the stocks, and did not apply to the nephews and nieces them-
selves, making their parents the stocks, there being no general
intent apparent in the will opposed to such construction.

pp. 446-448

Punctuation is ordinarily entitled to but slight consideration
in construing an instrument.                        p. 448

*Decided June 10th, 1927.*

Appeal from the Circuit Court No. 2 of Baltimore City
(STANTON, J.).

Bill by the Safe Deposit and Trust Company against Isaac
Cate Lycett and others for the construction of a will and
other relief. From the decree rendered in favor of Widgery
Thomas and others, children of Mary Cate Thomas, said
Lycett and others appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, and PARKE, JJ.

*W. Ainsworth Parker* and *John B. Deming,* with whom
was *John G. Schilpp* on the brief, for the appellants.

*Clarence K. Bowie* and *Edward H. Burke,* with whom
were *Bowie & Burke* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

The late Isaac M. Cate on April 6th, 1921, executed a deed to the Safe Deposit and Trust Company of Baltimore of certain bonds and stocks enumerated in a schedule attached thereto, together with all bonds, stocks, and securities which should be allotted to him on account of his share in the estate of his wife, in trust to collect the income therefrom and to pay over annually to his niece, Catherine Hill, during her life $600, and to pay the balance of said income to himself during his life. The deed further provided that after his death (subject to the payment of said annuity to said niece) the entire income of said estate should be divided into five equal parts and equally paid—one-fifth to each of his three daughters then living (naming them), one-fifth to the children of his deceased daughter Charlottie, and one-fifth to his son Horace.

As to the shares of the income of each of his daughters, he directed that

"the same be paid to each of them for and during the term of their respective natural lives, and upon the respective deaths of each of them her share of the principal of the trust estate is to be held by the trustee for her children and descendants until the youngest of her children shall arrive at twenty-one years of age; at which time I direct said trustee to pay the principal of such share to her said children then living and the descendants then living of her deceased children, *per stirpes;* and I direct that in the meantime the net income shall be paid to said children and descendants *per stirpes,* living from time to time as said income is collected. Should any one or more of my said daughters die without descendants, or in case she leave such descendants and they and all of their descendants shall die before the termination of the trust, as to her share, then I direct the share of such daughter shall be held by such trustee for the use and benefit of my other children and the children of my deceased daughter Charlottie, *per stirpes,* upon the same trusts as their original shares.

"As to the one-fifth share of my said son Horace, I direct said trustee to pay him the net income therefrom during his life and upon his death to divide and distribute the principal of said share as follows: If he die without leaving descendants, then one-half of his one-fifth portion shall go to his wife, if then living, the other half, or the whole if no wife survive him to be divided and distributed among his nephews and nieces then living and the descendants then living of any deceased nephews or nieces, *per stirpes*. Should he die leaving descendants, then one-third of the principal of his share shall go to his wife, if living, the remaining two-thirds of his one-fifth share or the whole thereof if no wife survives him to be held for his children then living and the descendants then living of his deceased children, *per stirpes* as follows: The shares of said children and the descendants of the deceased children shall continue to be held by said trustee until the youngest one of his children shall arrive at twenty-one years of age, when the distribution and division of the principal shall be made among his children and descendants then living *per stirpes;* the net income in the meanwhile to be paid to his children and descendants *per stirpes* living from time to time as said income is collected.

"If my said son shall leave descendants and they and all of their descendants shall die before the termination of the trust, then upon the happening of such contingency I direct that his share of the principal, subject to the provision herein made for his wife, shall be paid to his nephews and nieces then living and the descendants then living of his deceased nephews and nieces *per stirpes* absolutely.

"The share of the children of my deceased daughter Charlottie, shall remain in trust for their benefit until the youngest one of them shall reach thirty (30) years of age, at which time the principal of said share shall be paid over and distributed to them, or the survivors of them, and the issue of any of them who may be dead, *per stirpes*."

On August 30th, 1926, the settlor, pursuant to the right reserved by the prior deed, executed another deed to the same trustee whereby he altered and amended the trust treated by the prior deed as to the one-fifth share of his son Horace. The only purpose of the amendment, apparently, was to omit the wife of Horace as a beneficiary and to add a clause providing that if any other share should accrue to the son it should be held upon the same trusts as his original share. The only other change was to increase the number of commas. We are required to construe only that part of the amended deed in which the settlor provides for the devolution of the principal of the son's share at his death without leaving descendants, Horace having died without descendants and leaving sixteen nephews and nieces. There were no deceased nephews and nieces. That portion is contained in four or five lines, as follows: "If he dies without leaving descendants, then the whole of said share shall be divided and distributed among his nephews and nieces then living, and the descendants then living of his deceased nephews and nieces, *per stirpes.*" And the only question is: Do the words *"per stirpes"* apply to the nephews and nieces, making their parents the stocks; or do they apply only to the descendants, the nephews and nieces being the stocks?

The appellants contend for the first position; the appellees for the second.

We do not understand that there is any dispute about the general rule, that where there is a gift to a class, members of the class take *per capita,* unless the contrary intention clearly appears. It has been so generally accepted that the citation of authorities seems almost superfluous. In Maryland, certainly, the decisions have been uniform from at least as far back as *Benson v. Wright,* 4 Md. Ch. 278, down to *Stahl v. Emery,* 147 Md. 123. And appellees have cited cases to the same effect from many other jurisdictions. Nor is there any denial by appellants that "nephews and nieces" in the present case would form such a class, and the gift to them would be *per capita,* if the words *"per stirpes"* had been omitted, and if the clause in controversy stood by itself.

But they invoke the well established rule that what appears from a single clause to be a particular intent, must yield to the general intent or scheme as gathered from the four corners of the instrument, and they contend that an examination of the original and amended deeds in all their parts discloses a scheme of family equality which can be carried out only by treating the parents of the nephews and nieces as the stocks; that the words *"per stirpes"* as used in the original deed could apply to nephews and nieces as well as to their descendants; and that the punctuation in the amended deed should be considered in order to clear up a possible ambiguity. The case has been ably presented by counsel from their respective view-points, and their citations and arguments have been carefully examined and considered.

Our conclusion is that the decree of the learned chancellor must be affirmed. We do not find one scheme running through the entire instrument. In dealing with the shares of the daughters, the contemplation of lack of descendants was remote. Each of them had several children, whereas the son had none, and it does not certainly appear that he was even married. In the case of the daughters the creation of cross remainders between each of them and the other children on failure of descendants probably was not much more than a formality—at any rate only providing for an unlooked for contingency. And so it was done in a routine way. But when it came to disposing of the remainder in the son's share, the absence of descendants was on the mind of the settlor as more than a probability. This only son, it seemed almost certain, was not, like his sisters, to have the privilege of transmitting to descendants his patrimony; and so, it may well be, it is certainly not impossible, that the father determined that the remainder in the son's share should go to the nephews and nieces directly through the son, and not to the sisters, who already had their share for life in their own right, and probably in remainder through enjoyment by their children. If this was his thought he would not consider these nephews and nieces as representing their respec-

tive parents, but as representing their uncle, and to him they
were all alike related.

As to the punctuation, we cannot attach much importance
to it, even if it could be assumed that it was the work of the
settlor, which is at least doubtful. It does not clear up any
ambiguity. The commas in the original deed are distributed
in exactly the same way when the settlor is referring to
children of his daughters and the possible children of his son
and their respective descendants, as in the case of nephews
and nieces and their descendants. And in the amended deed
there is no difference in the use of commas, whether he is
referring to possible children of Horace and their descend-
ants, or to nephews and nieces and their descendants.

The words *"per stirpes"* could have no application to the
children of the respective life tenants. Why should it be
held that the same punctuation was meant to give them an
application to the nephews and nieces? We think the slight
respect given to punctuation under the general rule of con-
struction is fully applicable here. *Weatherly v. Mister,* 39
Md. 620; *Olivet v. Whitworth,* 82 Md. 258; 18 *C. J.* 258.

This brings us to the final question: Considering the pro-
vision by itself and without regard to punctuation, what
does it mean? The words *"per stirpes"* are naturally ap-
plied to descendants, and mean according to stock or by rep-
resentation. And indeed that is ordinarily the way the words
are used. As said in *Risk's Appeal,* 52 Pa. 269, generally
the *per stirpes* rule is a substitutional rule. "When issue
are said to take *per stirpes,* it is meant that the descendants
of a deceased person take the property to which he was en-
titled, or would have been entitled if living." *Rotmanskey
v. Heiss,* 86 Md. 633.

In 16 *A. L. R.* 150, note, under the heading "applicabil-
ity of direction for division *per stirpes,"* six cases are cited,
five of which are similar, as to their facts, to the present
case: *In re Title Guarantee & Trust Co.,* 159 App. Div.
803, 144 N. Y. Supp. 889 (affirmed 212 N. Y. 551); *Robin-
son v. Shepherd,* 4 DeG. J. & S. 129 (46 Eng. Reprint,
865); *Gibson v. Fisher,* L. R. 5 Eq. 51, 37 L. J. Ch. (N. S.)

67; *In re Wilson,* L. R. 24 Ch. Div. 664, 53 L. J. Ch. (N. S.) 130; *In re Dering,* 105 Law Times (N. S.), 404. Of these, all but one hold that the words *"per stirpes"* are to be applied only to the descendants. And that rule was followed also in *Re Alexander* (1919), 1 Ch. 371. In *Re Title Guarantee & Trust Co., supra,* it was said: "The words *'per stirpes'* are not strictly applicable to named legatees or legatees, designated as a class, and are ordinarily, at least, appropriate, and are used with respect to substitutional gifts to substituted legatees in the case of the death of the primary legatee." See also *In re Ebenshade's Estate* (1914), 23 Pa. Dist. R. 1069.

*Decreed affirmed, with costs to be paid out of the fund.*