MARY ISABELLE HOWARD PATCHELL, ET AL. *v.*
FREDERICK A. GROOM ET AL.
MARY E. McDERMAID, ET AL. *v.* SAME

[Nos. 44-45, January Term, 1945.]

*Decided June 13, 1945; concurring opinion filed June 25, 1945.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Philander B. Briscoe* in No. 44 and *William H. Hudgins* in No. 45, with whom were *Briscoe & Jones, Joseph A. Rafferty* and *Wyatt & Jones* on the brief, for the appellants.

*James P. Walsh* and *Jesse Slingluff, Jr.,* with whom were *J. C. Mattingly* and *Randolph Barton, Jr.,* on the brief, in both cases, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

The Court is asked to construe the will of the late John T. Grindall of Baltimore City, who died in 1885. The will was executed about two years before his death.

Under its terms, it gave the rest and residue of his property to his three sons, as trustees, to hold during the terms of the natural lives of such of his children as should be living at the time of his death, and of the survivors, and of the last surviving of his children, and if at the death of his last surviving child, a child or descendant of any of these children should then be living under the age of 21 years, then to hold the property until such minor child or descendant and all of them, if there were more than one, should attain the age of 21 years, or until such minor or minors should die, whichever should first occur. The trustees were to divide the net income into five equal parts, and to pay over one share to each of the testator's four sons, and one share to his only daughter. After the death of each one of the children, the trustees were to pay over the fifth previously paid to such child, to the child or children or descendants of such deceased child, *per stirpes* and not *per capita,* until the termination of the trust. There is also a provision that should any of the children die without leaving a child or descendant, or should such child or his children or descendants die without lawful issue, before the termination of the trust, then the part of the net income formerly paid to such child, should be divided and paid over to the other children and their children and descendants *per stirpes.*

The facts, about which there is no dispute, show that all five children of the testator survived him, and are now all deceased. Three of them, namely, John E. Grindall, Charles S. Grindall and Joseph A. Grindall,, left no descendants. Albert J. Grindall died January 11, 1890, leaving four children, two of whom died, leaving no children and descendants, but his two daughters, Mary E. (Murphy) Anderson and Alberta R. Brady, are both living. Mary E. (Murphy) Anderson has five children living and one of these children had a child living at the date of the termination of the trust. Alberta R. Brady has one child. Mary Eliza Howard, the last child of the testator to die, departed this life June 23, 1929, leaving

two children, Stanton Wren Howard and Ella M. H. Bloedorn. Stanton Wren Howard has also two children and Ella M. H. Bloedorn has one. At the death of Mary Eliza Howard there was one descendant of the testator living who was under the age of 21 years. That descendant reached the age of 21 on July 25, 1943, on which occurrence, under the terms of the will, the trust was to cease and the estate was to be divided. The provision for such determination and division is contained in Item 5, which is the specific item the Court is asked to construe. That item reads as follows: "At the death of the last survivor of my children provided none of the children or descendants of any of my said children be then living under the age of twenty-one years, but if any child or descendant of any of my said children be living at the death of the last survivor of my children and under the age of twenty-one years, then upon the death or majority whichever shall first occur of all such minors it is my will that the trust hereinbefore mentioned shall cease and determine, and thereupon I do hereby devise and direct that all my estate and property real, personal and mixed shall be divided equally among all of my descendants then living per stirpes and not per capita, to them, their heirs, personal representatives and assigns absolutely."

The question is what did the testator mean by saying that his property should be "divided equally among all of my descendants then living per stirpes and not per capita." The chancellor concluded that these words constituted a gift to a class which consisted of the grandchildren living at the time fixed for the termination of the trust, and he accordingly directed the property to be distributed to the four living grandchildren; namely, Stanton W. Howard, Ella M. H. Bloedorn, Mary E. (Murphy) Anderson and Alberta R. Brady. Appeals were taken by the great grandchildren and the guardian *ad litem* of the great great grandchildren. The appellants stress the words "equally among all my descendants." The appellees stress the words "per stirpes and not per

capita." The question before us is what did the testator mean by what he said, *Childs' Estate v. Hoagland,* 181 Md. 550, pp. 556-557, 30 A. 2d 766, and all of what he said.

Where bequests are made to descendants equally, or to all the descendants of any person, or to the descendants simply, the rule is that all take per capita, unless the contrary intention appears. *Levering v. Orrick,* 97 Md. 139 at page 145, 54 A. 620; *Requardt v. Safe Deposit & Trust Co.,* 143 Md. 431, 122 A. 526. In the will before us the contrary intention clearly appears because the testator qualifies his direction of an equal division among all the descendants by indicating the method as "per stirpes and not per capita." Appellants do not contend for a strict *per capita* division among all the descendants, which would result in the four grandchildren, the nine great grandchildren and the one great great grandchild, living at the time of the ending of the trust estate, all sharing equally and each receiving one fourteenth of the estate. Appellants' contention is that the *stripes* intended by the testator were his children, and therefore, the estate should be primarily divided into two parts, corresponding to the number of children left by the testator who left descendants. These were Mary Eliza Howard and Albert J. Grindall. Then, according to appellants' construction, the descendants of the testator through the stirps Mary Eliza Howard being five in number, they would share equally and each get one-fifth of her one half, or one-tenth of the estate. The descendants of Albert J. Grindall, being nine in number, would similarly each get one-ninth of his one half, or one-eighteenth of the estate. This construction, as well as the construction contended for by the appellees, uses the word "equally" to denote, not equality among all the descendants, but equality in certain groups.

In the construction of wills, the sole object of the inquiry is to ascertain the intention of the testator. When ordinary words are used, these are to be taken in their ordinary meaning unless a contrary intention clearly ap-

pears. Likewise, when recognized legal terms are used, the testator is presumed to have used such terms with the knowledge of their technical meaning, and with the purpose of employing that meaning in the disposition of his property. But even technical meanings may vary with surrounding circumstances, and legal terms may mean one thing in one will and have a different meaning in another. The final inquiry in each such case is what did *this* testator mean by the use of this term *in this will.*

Inasmuch as the method of division is to be "per stirpes," it becomes of primary importance to determine the meaning of these words, first, usually, and secondly, as applied to the case before us. The technical meaning is well known and has been frequently stated by all courts. It is the taking by representation from a stock or root, so that the descendants of a deceased ancestor take the part to which he would have been entitled had he been living. In the instant case two questions arise as to the application of this rule. Where does the stock or root begin, or to put it in another form, who are the stocks, and, this having been ascertained, how far down the line of descendants does the doctrine of representation extend. In the consideration of these questions, we turn to the applicable authorities.

In *Rotmanskey v. Heiss,* 86 Md. 633, 39 A. 415, involving the construction of a deed, which stated that property should vest absolutely in certain grantees and their issue *"per stirpes* in equal shares, each of said grantees being a *stirps,"* the Court said, "It is not conceivable how any property can be divided between persons and their issue per stirpes. * * * A *stirps* is a root of inheritance; it designates the ancestor from whom the heir derives title; and it necessarily presupposes the death of the ancestor. When issue are said to take per stirpes, it is meant that the descendants of a deceased person take the property to which he was entitled, or would have been entitled if living." In *Lycett v. Thomas,* 153 Md. 443, 138 A. 225, 227, the Court said, "The words *'per stirpes'* are naturally applied to de-

scendants, and mean according to stock or by representation. And, indeed, that is ordinarily the way the words are used. As said in *Risk's Appeal*, 52 Pa. 269, 91 Am. Dec. 156, generally the *per stirpes* rule is a substitutional rule." And later, *"In re Title Guarantee & Trust Co.*, supra, 159 App. Div. 803, 144 N. Y. S. 889, affirmed 212 N. Y. 551, 106 N. E. 1043, it was said 'The words *"per stirpes"* are not strictly applicable to named legatees, or legatees designated as a class, and are ordinarily, at least, appropriate, and are used with respect to substitutional gifts to substituted legatees in the case of the death of the primary legatee.' " In *Slingluff v. Johns*, 87 Md. 273, 39 A. 872, 873, where the will provided that a certain portion of the testator's estate, entrusted to his sons, should at their death "revert to my children who may survive, or to the descendants of their children, and be equally divided between them," the Court held that "to the descendants of their children" was meaningless under the general intention of the testator as shown by his will, and must be read "to the descendants of my children." And then the Court said that under this alteration the words "be equally divided between them" imply an equal division not between the individuals who take, but between the respective stocks that take; viz., the surviving children and the deceased children.

In *Jarman on Wills*, 7th Ed., 1560 it is stated, "Where the distribution is to be per stirpes, the principle of representation will be applied through all degrees, children never taking concurrently with their parents." Citing as authority *Ralph v. Carrick*, 5 Ch., D. 984, 11 Ch., D. 873, *Re Rawlinson* (1909), 2 Ch., 36.

In the early English case (1863) of *Robinson v. Shepherd*, 32 Bevans 665 (Sir John Romilly, Master of the Rolls) an estate was devised to trustees to sell and pay the sale moneys to the persons, being such descendants as next hereinafter mentioned, *in equal shares*, among and to the lawful descendants living at the time of testator's death, of such of the brothers and sisters of

his late grandfather as had died leaving lawful descendants, such descendants respectively, to be entitled to share the same moneys in a course of distribution *per stirpes* and not *per capita.* Two sisters, but no brothers, had died leaving such descendants. The Master of the Rolls said, "How can I give the fund *per stirpes* and not *per capita* and at the same time give it in equal shares. I am of opinion * * * that there are two roots, that the fund must be divided into two parts and then that one of them must be divided equally amongst the descendants of one daughter and the other moiety amongst those of the other daughter, living at the death of the testator. If one left eleven and the other five descendants, it would have to be divided into two equal shares, and one such share would then be divided in elevenths and the other in fifths."

This was reversed on appeal to the Chancellor (4 D. J. & S. 129) where Lord Westbury said, "The decision * * * depends * * * upon the question to whom the expression per stirpes in this will is to be applied; and as to that I think that * * * the persons who are to be blended secundum stirpes are to be descendants, who, again, are to be arranged as amongst one another and according to their stocks. The arrangement per stirpes, to the exclusion of individual arrangement, implies that out of the whole body of descendants, some are to be selected as representing the rest, and consequently the words per stirpes are intended by the testator as a limitation of the universality of the words descendants * * *. But the will does not direct a division of the sale moneys * * * into as many families as there might be brothers and sisters of his grandfather who had died leaving issue; but a division among the descendants themselves as purchasers, as simple legatees * * *. And in my judgment * * * the words per stirpes refer to the descendants * * * the legacy is given to the stirps, and not to the individuals * * * the descendants, respectively must be arranged amongst the families whence they sprang, and then the head of each family

must be taken as being the stirps—that is the root or stock, and as entitled as the legatee. * * * The words 'equal shares' only imply how they are to take, viz.:— that each stirps shall have an equal share with every other stirps, and do not affect the rule of ascertainment * * *. This rule runs throughout the whole, viz.:—that you must take the * * * parent as the person who is to take the share as representing and embodying in himself all those descendants who are his own immediate issue. * * *. I must reverse his Honor's decision and declare that the words per stirpes and not per capita used by the testator are applicable to the descendants who are to be classified secundum stirpes or according to their families, and that the property in question is to be divided into as many shares as there are stirpes or families, each stirps or family taking an equal share."

The next English case was *Gibson v. Fisher*, L. R. 5 Eq. 51. In this case Lord Romilly, M. R., declined to follow Lord Westbury in *Robinson v. Shepherd*, and treated the case as if it were *res integra*. The will to be construed directed trustees to pay the residue of the estate equally amongst the descendants of the brothers and sisters of testators's father who might be living at the time of testator's decease "such descendants * * * to take severally as tenants in common *per stirpes* and not per capita." There were four brothers and sisters of the father, who were all dead and had descendants living at the death of testator. The Master of the Rolls said, "* * * I am of opinion that the whole residue must be divided *per stirpes* from the beginning and that the rule of the stirpes must run through every descent, considering that per stirpes is an expression which means that all the persons who are to take are to take *per stirpes* and that this must run through the whole range of descents * * * I am of opinion * * * that the whole fund must be divided into as many portions as there were families descended from such brothers and sisters then living. The aliquot portion of each family being thus ascertained, the division must be car-

ried on exactly in the same way as if that portion had been given to the descendants of that person *per stirpes* and not *per capita* and so throughout the whole * * *. This * * * is the essential meaning of the words 'per stirpes.' Why are you to stop at any one place, when the testator directs that the descendants are to take per stirpes, and say that after that they are to take per capita? Or, * * * why are you to say that the stirps are to be ascertained at any particular period, instead of the period which the testator has mentioned?" The M. R. then gave an illustration which showed that if there were four brothers and sisters who left descendants living at testator's death the fund would first be divided into four parts.

The next case, *In re Wilson* L. R. 24 Chan. Div. 664, decided in 1883, discusses each of the above cases. North, J., distinguishes them, because he says that in *Gibson v. Fisher* there was no distinction on the face of the will between one generation and another. The only stocks indicated were the uncles and aunts. He says, however, that if he had to choose, he would follow *Robinson v. Shepherd* in preference to *Gibson v. Fisher*. In the Wilson case, trustees were directed to hold the fund in trust for such of testator's cousins, children of four named deceased aunts and two named deceased uncles, living at the happening of an event named, and such issue, then living, of any of his said cousins, then dead, as should attain the age of 21 years or should die under the age of 21 years leaving issue at their decease, to take, if more than one, in a course of distribution according to the stocks, and not to the number of individuals. At the happening of the event, there was living only one cousin, the only child of one of the named uncles, but there were living children and other issue of fifteen deceased cousins of the testator, who were children of the other named uncle and the four named aunts. It was claimed by the living cousin that the uncles and aunts were to be taken as the stocks, and the fund divisible in sixths. The issue of deceased cousins claimed that the

cousins themselves were to be taken as the stocks and the fund divided into sixteenths. North, J., said, "The question is, where am I to look for 'the stocks.' The legatees under the will are the persons whose shares are to be distributed in this way, and this appears to me to indicate an intention that the legatees themselves are to be looked to as the origin of the stocks, rather than any other persons outside them * * *. Here I find that cousins of the testator are the persons who are in the first instance named as legatees, and I think that the stocks referred to must, *prima facie*, be found in that generation, especially as the issue of deceased cousins are to take in their place * * *. As soon as you have reached the cousins you have done all that is necessary; you are not to go back to any prior generation * * *. Then comes the question how far you are to go down and I do not see where you are to stop. The words seem to me to apply to every generation * * *. You must take in all the descendents of the stocks * * *. I shall therefore make a declaration that the words 'according to the stocks' are applicable to the descendants of cousins and not to the cousins themselves. The fund will be divided into sixteen shares."

Then came *Re Dering*, 105 L. T. 404, decided in 1911. There testator gave property in trust for the issue of his deceased aunts, C. and H., living at his decease, "such issue to take *per stirpes* and not *per capita.*" There were thirteen separate families of the issue. Held, the words per stirpes referred to the issue and not to the two aunts, hence the property was divisible into thirteen shares, and not into two shares.

In *In re Alexander*, L. R. 1919, 1 C. D., 371, the Court had before it a will which left a fund in trust to pay the income to named sisters or the survivor for life, and after the death of the last survivor it was to be held "in trust for such of my nephews and nieces (being children of my own brothers and sisters) living at the time of the death of the survivor" of the sisters named "and for the issue then living of any such nephews and nieces

of mine who may have previously died as, being male, shall have attained or shall attain the age of twenty-one years, or being female, shall have attained or shall attain that age, or shall have married or shall marry under that age, and if more than one as tenants in equal shares per stirpes." Four questions were raised as to the interpretation of this will. As to three of them, Sargant, J., said that no real difficulty arose and he had decided them without any argument to the contrary. One of these was that as between issue of different degrees in the same line of descent, issue of a more remote degree are excluded by issue of a less remote degree. The fourth question was the one which gave difficulty. It was stated, "This question is at what stage the stirpital division directed by the will is to begin. Is it to take effect in relation to the stocks of descent of the first or earliest class of takers— namely, the nephews and nieces of the testator, so that these persons are to share not per capita but per stirpes, in which case the first process of division here would be into fourths corresponding with the number of the testator's brothers and sisters whose stocks survived him? Or is it to begin to take effect only in relation to stocks of descent as from the nephews and nieces themselves, so that these persons themselves are to share per capita, in which case the first process of division here would be into nineteenths, corresponding with the number of the testator's nephews and nieces who survived him, either in person or by their stocks?" The earlier cases of *Robinson v. Shepherd, Gibson v. Fisher, In re Wilson* and *In re Dering* were referred to and the writer of the opinion said he was strongly impressed with the views of Lord Romilly, M. R., in *Gibson v. Fisher* and preferred them to Lord Westbury in *Robinson v. Shepherd,* but that North, J., in *In re Wilson,* and Warrington, J., in *Re Dering* had followed Lord Westbury, and therefore he felt bound to do the same, in addition to which he found certain words in the will before him which he thought would indicate such a decision. These words were "tenants in equal shares." And he said they may be

explained as referring to the original division of the fund, and causing that to be an equal division between all nephews and nieces surviving in person or by issue, while leaving the phrase "per stirpes" to operate with relation to the secondary introduction of the issue of nephews and nieces. And he further said, "* * * in the present case it appears to me easier to reconcile the words 'tenants in equal shares' with a stirpital division confined to the stocks of nephews and nieces than with one extending also to stocks of the testator's brothers and sisters." As a result the trust fund was declared to be primarily divisible into nineteen parts rather than into four.

In the New York case cited with approval in *Lycett v. Thomas, supra,* that is, *In re Title Guarantee & Trust Co.,* 144 N. Y. S. 889, 890, approved by the New York Court of Appeals, the Appellate Division of the Supreme Court had before it a will bequeathing a certain sum in trust to pay the income to a certain person with remainder over "unto the children then living of my sons, Charles P. Buchanan and William C. Buchanan, and the issue of such as may have died leaving issue then surviving, per stirpes and not per capita." There were five grandchildren; two, the issue of one son and three, the issue of the other, and it was held the five took equal shares. After repeating the familiar doctrine that the question depended on the intention of the testator to be ascertained from the whole will, the court made the statement quoted in *Lycett v. Thomas, supra,* and heretofore set out in this opinion. Among the cases cited in support of this statement is the English case already discussed of *Robinson v. Shepherd, supra.* In *Lycett v. Thomas* all five of the English cases hereinbefore discussed were referred to as authority.

The Maryland statute providing for distribution in cases of intestacy is a practical application of the *per stirpes* rule. The applicable parts is found in Flack's Annotated Code, 1939, Article 93, Section 133. The English law differs from the Maryland law with respect

to representation by collaterals, but is similar as to lineal descents. Both in Maryland and in England representation is applicable among all lineal descendants, whether in the same or different degrees of descent. If we consider Article 93, Section 133 as a statutory interpretation of "per stirpes," then a will leaving property to descendants of the testator, *per stirpes*, would be held to direct that the property be divided according to the number of children the testator had, and in case of the death of one of these children, his share would be taken by his children, and so on down through the whole range of lineal descent as far as became necessary. That is because children, being the closest descendants to the testator, are necessarily the primary takers and become the stocks.

But in a case where, not by accident but by design, the first takers are not the children, but the grandchildren, it follows, just as clearly, that the grandchildren must be the stocks, and not their parents who do not take at all. That is the theory of the English decisions which have been approved by this Court and which we have quoted from at length earlier in this opinion. In some of these cases the first takers were designated as cousins, or nephews and nieces, but in *Robinson v. Shepherd* they were called simply descendants of deceased brothers and sisters of testator's grandfather, and in *Re Dering* they were called simply the issue of testator's deceased aunts. The doctrine of these cases is that a descendant cannot take by substitution the share of a deceased ancestor unless that ancestor would have taken that share had he been living at the appointed time. If the ancestor is not entitled to take by the provisions of the will, then he has no share which his descendant can take, and if his descendant is the first person entitled to take, then that descendant does not take by substitution, but is the primary taker in his own right.

In the instant case it happens to make no practical difference whether we determine that the children are

the stocks or whether we determine that the grandchildren are the *stirpes.* That is so because there were two children leaving descendants and each of these two children had two children. But we think the question should be clarified. The division provided for by the will is not to take place until after the death of the last surviving child of the testator, and the children do not have any interest in the corpus of the estate. The first possible takers of the corpus are necessarily, by the terms of the will and not fortuitously, the grandchildren. This is not a collateral circumstance, but is a result anticipated by the testator in drafting his will as he did. So, whatever might be held as to other wills in which property is left to the descendants of the testator *per stirpes,* in this will the grandchildren are the stocks, and the principle of representation would begin with their descendants, if any of them had died prior to the appointed time of division. The grandchildren are the first possible takers, and they take by purchase.

The direction of equality is to be applied to the grandchildren as the heads of families, just as the words "in equal shares" were applied by Lord Westbury in the Robinson-Shepherd case, *supra,* and by Sargant, J., in In re Alexander, *supra.* Since all of the grandchildren are living, they each take an equal share, and none of the descendants of living grandchildren can take because their ancestors are alive and take the shares intended for their respective families. The words "equally among all my descendants then living" do not change the method of distribution by representation. They are intended to apply to those stocks or representatives of stocks in existence at the fixed time of taking. These are the descendants living who are to take according to the method prescribed, and they are to take equally. Any other construction would not be a division *"per stirpes"* and would not be in accord with the directions of the will.

We find nothing in the other provisions of the will which conflict with this conclusion. The will in that respect is unlike that considered in the case of *Mazziotte v.*

*Safe Deposit & Trust Co.*, 180 Md. 48, 23 A. 2d 4. There we held that the use of the words *"per capita"* indicated an intention that parents and children should share equally. There also, in other clauses of the will the words *"per stirpes"* were used indicating a contrary intent, and a knowledge by the testator of the differences he intended to make in his bequests. In the income provision of the will before us now, we find the testator also using the term *"per stirpes* and not *per capita,"* indicating a general desire on his part to have both the income and the corpus of his estate divided in that manner and by that method.

The fact that the corpus was to be divided according to different stocks than the income was not unnatural. So long as any of the children were living, the income from the estate went to them if living or to their representatives if they were dead until the last descendant living at the death of the last surviving child had arrived at maturity. Such descendant was not necessarily one of those sharing in the income, and, as a matter of fact, the one whose arrival at the age of 21 fixed the time for the division of the corpus, did not share in the income. But when all the children were dead, and all their descendants (so far as the testator could arrange it) had reached the age of legal competence, he turned his attention to the descendants nearest to him, and gave the corpus of his estate to them equally. But in so doing, he continued the doctrine of representation, which he had used throughout the will. There is nothing we can find in his will indicating a *per capita* division after the stocks are ascertained.

Finding no error in the decree appealed from, it will be affirmed.

*Decree affirmed, costs to be paid out of the estate.*

HENDERSON, J., delivered the following separate opinion.

I concur in the result, *viz.*, that descendants of living ancestors do not share in distribution among "all of my descendants then living *per stirpes* and not *per capita.*" but I do not agree that the grandchildren of the testator constitute the *stirpes* or stocks of descent, in this case.

The majority opinion construes "equally among all of my descendants then living *per stirpes* and not *per capita*" as meaning "equally among my grandchildren then living *per capita* and the then living descendants of deceased grandchildren *per stirpes.*" As the only grandchildren are two children of a son and two of a daughter, this construction does not affect the result. But it does violence, I think, to (1) the intention of the testator, (2) the plain meaning of the words, and (3) in effect, to the Maryland intestacy laws, as reflected in the testamentary plan and the words of the will.

Under Item 3 of the will the testator gave the residue of his estate to his sons, in trust, to pay one-fifth of the net income to each of his five children, for their respective lives, and from and after the death of each respectively, to pay one-fifth of the net income "to the child or children and descendants of such my deceased child *per stirpes* and not *per capita*" and in the event of failure of issue of "any one of my said children" at or before the termination of the trust, then the one-fifth of the net income "shall be divided among and paid over to my other children and their descendants *per stirpes* in the manner hereinbefore limited for their several parts." Item 5 provides that upon the termination of the trust all of the corpus "shall be divided equally among all of my descendants then living *per stirpes* and not *per capita,* to them, their heirs, personal representatives and assigns absolutely." In short, throughout the continuance of the trust, the income from time to time is to be divided equally among all of my descendants then living *per stirpes* and not *per capita,* and upon the termination of the trust, the corpus is to be divided in

accordance with these very words, which exactly describe every previous division of income.

In Item 2 of the will the testator, out of his own estate, equalized the provisions of his wife's will (which sudden death prevented her from changing) "both as to income and principal," among their "children and descendants," "to the end and intent that all of our said children and their children and descendants shall share equally the estates and property of their parents." Equality among "all of our children and their children and descendants," *i. e.*, equality among our children and among their children and descendants as representing our deceased children, is the stirpital equality established under the Maryland intestacy laws.

Standing alone, the words "equally among all of my descendants" might be taken to connote a *per capita* distribution. The mere fact that income is distributed *per stirpes* would not necessarily be controlling as to the distribution of corpus. When corpus is distributed upon the termination of life estates, that is naturally the occasion for making any change from *per stirpes* distribution of income among children, to *per capita* distribution of corpus among their descendants. *Requardt v. Safe Deposit & Trust Co.,* 143 Md. 431, 436, 122 A. 526; *Lycett v. Thomas,* 153 Md. 443, 138 A. 225; *Re Stone* [1895] 2 Ch. 196. But this court has said (quoting Jarman) that "a very faint glimpse of a different intention in the context" will require that words ordinarily indicating *per capita* distribution be otherwise construed. *Slingluff v. Johns,* 87 Md. 273, 283, 39 A. 872. The fact that income is distributed *per stirpes* may be a decisive circumstance showing such an intention as to corpus, *Levering v. Levering,* 14 Md. 30, 38, 39; *In Re Campbell's Trusts,* 33 Ch. D. 98, especially when the corpus is distributed to the same persons as have already been receiving the income. *Brett v. Horton,* 4 Beav. 239. In the present case there is no distribution of corpus, and no change in distribution of income, upon the death of all the children. The distribution of corpus is compelled by the Rule

against Perpetuities, and has no relation to any other feature of the testamentary plan.

In the case at bar we need not depend upon the general scheme of the will, the provision for a *per stirpes* distribution of income, or the stirpital provision in Item 2. The words "equally among all my descendants then living," are expressly qualified by the words *"per stirpes* and not *per capita."* By the use of this precise phrase, the testator indicated that his descendants should take by representation or substitution and effectively negatived any implication that any of the testator's descendants should take *per capita.* Compare *Rotmanskey v. Heiss,* 86 Md. 633, 39 A. 415, and *Plummer v. Shepherd,* 94 Md. 466, 51 A. 173.

The case of *Mazziotte v. Safe Deposit & Trust Co.,* 180 Md. 48, 23 A. 2d 4, illustrates the point. In that case the expression was "issue of my said four daughters, living at the termination of the trust per capita." The court said: "The word 'issue' * * * in Maryland * * * has usually been found equivalent to heirs of the body or those who would take in case of intestacy, thus rendering gifts to remoter descendants only substitutional, in place of gifts to deceased ancestors. * * * But the word does not stand alone. The takers are to be the issue per capita, and the qualification seems to dispose of the question of interpretation." 180 Md. at page 50, 23 A. 2d at page 5. Conversely, in the will before us, the words *"per stirpes* and not *per capita"* exclude the possibility that the descendants should take in their own right and not by representation.

In the *Restatement, Property,* Sec. 303, it is said that when a "class gift" is made to the "descendants of B" (or "issue of B"), ordinarily distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession.

In comment f to Sec. 303, it is said: "When a limitation is made to the 'issue of B,' or to the descendants of 'B,' and all of B's children are dead, but grandchildren of

B are alive, a problem arises as to whether these grand-children of B take equal shares or take as representatives of their respective parents. This is determined in any state in the same manner as the similar problem of intestate succession is determined in that same state. Commonly statutes provide that remote issue of the intestate, when all of the same degree, take *per capita*. Where such a statute exists, the distribution of a class gift of the sort described in this comment would be regulated thereby unless a 'contrary intent of the conveyor is found from additional language or circumstances.' "

Comment h to Sec. 303 states: "Limitations which come within the rule stated in this section frequently contain language or have circumstances tending to corroborate the conclusions that the term 'issue' or 'descendants' has been used as substantially the equivalent of 'heirs of the body' and hence that distribution should be made in accordance with the law of intestate succession * * *. Illustrative of these corroborative factors are the following: (1) the conveyance specifically provides for a *per stirpes* distribution; (2) the conveyance refers to the law of intestate succession or uses the word 'heirs' or 'inherit' or other similar word, in a manner justifying the inference that the conveyor thought of the class as having shares dependent upon their differing degrees of relationship to a single person; and (3) the conveyance embodies a general plan of the conveyor which can be best effectuated by a stirpital distribution."

In so far as the Restatement requires distribution *per stirpes* of a gift to "descendants" or "issue," without more, this reflects a change from the early English authorities, as to "issue," and from a dictum of Mr. Jarman in his first edition, as to "descendants," quoted by this Court in *Levering v. Orrick*, 97 Md. 139, 145, 54 A. 620, and by the majority opinion in the case at bar. The rule of the Restatement was, however, adopted by this court in *Mazziotte v. Safe Deposit & Trust Co.*, *supra*. But regardless of the implication from "descendants," standing alone, the English and American authori-

ties are entirely in accord on the point that distribution *per stirpes* means distribution to those who would take, by representation, under the intestacy laws.

The Maryland Statute of Distributions, Sec. 127 et seq., Art. 93 of the Code 1939, (adopted by reference in Sec. 1 of Art. 46 of the Code, subtitle "Descents") does not provide for an equal division among grandchildren where the children of the intestate are dead. See *McComas v. Amos,* 29 Md. 120 and *Iglehart v. Holt,* 12 App. D. C. 68. Nor does the English Statute of Distributions, 22 and 23 Car.II, c. 10 (*In re Natt,* 37 Ch. D. 517, 520-524), or the present Act of 1925, 10 *Halsbury's Laws of England,* Sec. 848, p. 587. The statutes in most of the other states are to the contrary. *In re Samson's Will,* 257 N. Y. 358, 178 N. E. 557; *Matter of Strohmer's Estate,* 149 Misc. 219, 266 N. Y. S. 886; See cases noted in 140 *A. L. R.* 1141. See also 4 *Kent's Commentaries* (14 Ed.) 375, 391, 392; 5 *Thompson, Real Property* (Permanent Ed.), Sec. 2408; *Tiffany, Real Property,* (3d Ed.), Sec. 1124; 11 *Notre Dame Lawyer,* 14, 142 et seq. In Maryland, as in England, by virtue of the Statute of Distributions grandchildren take as the representatives of their respective parents, even where those parents are dead, in cases of intestacy—and in analogous cases under wills. *Lobe v. Goldheim,* 153 Md. 248, 138 A. 5; *In re Natt, supra.* In the latter case North, J., not only pointed out that by Justinian's law, upon which the English Statute of Distributions was based, distribution to grandchildren was *per stirpes,* even when they were the only claimants, but he said: "it may be doubted, whether our Courts of Equity would be easily induced thus to extend this restrictive construction of the distribution *per stirpes* to descendants. It was once indeed attempted before Lord Chancellor Hardwicke. But, after hearing the point discussed, he discouraged the idea of a distribution *per capita,* and gave an opinion against it."

In the case at bar we not only have a limitation to the descendants of the testator, which seems to refer the determination of the proportions in which the grand-

children take to the Statute of Distributions, but all of the corroborative factors stressed in the Restatement are present. There is nothing in the will which permits a *per capita* division at any time. No authority has been cited, and none has been found, which suggests doubt as to the meaning of "my descendants *per stirpes*" or "the descendants of B *per stirpes*." "My descendants *per stirpes*" or "the descendants of B *per stirpes*" are my children or B's children, as the case may be. *Lycett v. Thomas, supra,* and the English cases therein cited, belong to a narrow class of gifts to "the descendants of A and B *per stirpes*," *i. e.,* independent gifts to the descendants of any one of two or more persons, unconnected with previous gifts of income to the same descendants or the specified ancestors. In such cases, the question arises as to the intended point of reference, a question that cannot arise where the testator speaks of his own descendants, who necessarily begin with his children. In 3 *Jarman on Wills* (7th Ed.), p. 1561, it is pointed out that "if the gifts were to the descendants of one person *per stirpes*," the conflict between Lord Romilly's construction and Lord Westbury's could not occur.

In Maryland, as in England, distribution among my descendants then living *per stirpes,* would seem to establish my children as the stocks and to fix the proportions in which my surviving grandchildren take. *Lobe v. Goldheim, supra* (decided two days before *Lycett v. Thomas*), *In re Natt, supra.* The contrary statement in the majority opinion is not necessary to the decision in this case.

COLLINS and MARKELL, JJ., concur.