JOHNSON ET AL. *v.* SWANN ET AL.

[No. 19, October Term, 1956.]

*Decided November 9, 1956.*

Before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

Submitted on brief by *Robert T. Barbour* for the appellants.

Submitted on brief by *F. DeSales Mudd* and *Mudd & Mudd* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

By bill for declaratory decree, the appellee, H. Austin Swann, prayed the equity court in Charles County to determine that he could sell his one-fourth remainder interest in certain stock, under Item 4 of his father's will, free and clear of the claims of his own children. His two brothers and his sister were not made parties to the proceeding. His mother, the life tenant and trustee, joined in the bill and agreed to the sale provided it "is consummated without prejudice to" her right to the income and voting privileges during her life. His married daughter opposed the proposed sale, claiming that his interest was contingent upon his surviving the life tenant. His four other children, being infants, answered by guardian *ad litem*. The Chancellor, in an able and succinct opinion, found the complainant entitled to the relief prayed. This appeal fol-

lowed. No questions are raised as to the right to declaratory relief or necessary parties.

Harold S. Swann died in October of 1948, leaving a will dated November 12, 1946, which was duly probated. After some minor bequests, Item 4 provided as follows:

> "I give and bequeath all of the stock of the Southern Maryland Oil Co., Inc., registered in my individual name at the time of my death, to my devoted wife, Elizabeth P. Swann, if she survives me, in trust to receive the full income therefrom for her sole benefit during the period of her natural life, my said Trustee to have full authority and power to vote said stock and to act in every respect she deems for the best interest of the corporate business; and upon the death of my wife said trust shall cease, or if she should predecease me, I hereby give and bequeath the aforesaid stock (or the proceeds from the sale of the same if purchased by James W. Wills pursuant to his option in this respect) to my four children, namely, Anna Swann Wills, Harold Austin Swann, T. Allen Swann and William Hayes Swann, share and share alike, per stirpes and not per capita; and in the event James W. Wills does not elect to exercise his option to purchase said stock within the time prescribed by said agreement, it is my will that my children shall receive said stock absolutely and without any restrictions whatsoever, with full authority to divide the same in kind or liquidate said stock as they see fit."

In Item 5, the residue of the estate was left to his widow "to have and to hold absolutely as her own and without any restrictions whatever." By Item 6, the widow was appointed executrix.

It was stipulated that 7,494 shares of the stock of the Southern Maryland Oil Co., Inc. now stand registered on the books of the company in the name of "Elizabeth P. Swann, Trustee of Harold S. Swann Estate", and that the widow and the four children named in the will still survive.

The "option" referred to in Item 4 of the will is explained by a written agreement filed as an exhibit, dated July 16, 1946. This recites that Harold S. Swann and James W. Wills are the owners of one-fourth each of the capital stock of Southern Maryland Oil Co., Inc., the remaining one-half of the issued stock being owned by the respective wives of the parties. It recites that the parties had issued one share of voting stock in their joint names, with the right of survivorship, and that the survivor should have the "further option" of purchasing the stock of the party first dying. The agreement then provided "That the survivor of them, upon the death of the party first to die, if said deceased party has been predeceased by his wife, (and if not, upon the death of the widow of the party first to die) shall have the option of purchasing from the estate of the deceased all the stock of every class * * * registered as of July, 1946 on the books of said Company in the name of the party first to die less the one share otherwise provided for * * *" at a price to be determined by appraisal as therein provided. The agreement was declared to be binding on the heirs, personal representatives or assigns of the parties.

The appellant's first contention is that Item 4 does not create a remainder in any of the children named. The argument is that all of the language following the phrase, "upon the death of my wife said trust shall cease", relates only to the disposition in the event that she should have predeceased the testator. It is contended that no disposition is made of the corpus of the terminated trust, and that therefore it passes to the wife under Item 5. It is true that Item 4 has a curious verbal gap between the termination of the trust and the subsequent bequest of the stock or its proceeds. But the subsequent language declaring, "* * * it is my will that my children shall receive said stock absolutely and without any restriction whatsoever * * *", can hardly be restricted to the alternative of the wife's not surviving. The option, which is twice referred to, was applicable not only in the event that the wife predeceased the testator, but "upon the death of the widow of the party first to die". The testator must have used the language quoted with full knowledge that the option had a double aspect.

Giving effect to the word "or" as one alternative, we can readily imply the other alternative to be the death of the life tenant, at which time the trust is terminated. The appellants' construction would produce the capricious result that the survival of the wife would not merely delay the children's entry into possession, but cut off a legacy to which they would be entitled without question if she failed to outlive the testator. It can hardly be supposed that the testator could have intended such a thing. Again, if the testator intended the remainder to pass to the widow under Item 5, in the event she survived him, there would be no point in creating a trust and a life estate. The same result could be accomplished by an outright gift of the stock or proceeds to her. We find no difficulty in concluding that remainders were created in the four named children.

The appellants further contend that if H. Austin Swann has a remainder interest, it is not a vested one. At the outset, it may be noted that the interest would be alienable regardless of its future or contingent character, so long as the persons to take are identified or identifiable. *In re Clayton's Trust Estate,* 195 Md. 622, 625; *Hammond v. Piper,* 185 Md. 314, 318; *Miller, Construction of Wills,* § 233. See also *Simon v. Safe Dep. & Trust Co.,* 190 Md. 468, 473. But the question here posed calls for a determination of the character of the estate, for that will affect its present market value. It is not suggested that there would be any gift over in default of issue, nor are we asked to pass on the question. It would probably be inappropriate to do so, in a case to which the other named remaindermen are not parties. The sole question is whether H. Austin Swann can sell his interest free and clear of the claims of his own children and descendants in the event that he fails to survive the life tenant. The appellants contend that his remainder is contingent, or subject to be divested, in the event of his failure to survive the life tenant, and that if he dies before the life tenant the interest would pass to such of his descendants per stirpes as might be living at the death of the life tenant. The answer depends upon the intention of the testator, as gathered from the will and surrounding circumstances, aided by recognized canons of construction.

One of the most powerful of these canons is the rule of early vesting, and it would require rather explicit language to show a testamentary intent to delay the vesting of a remainder in named individuals, the testator's own children, in favor of a shadowy class of descendants. We find nothing in the language of the will to support such a construction. The use of the phrase following the bequest to his children, "absolutely and without any restriction whatsoever", may be compared with the phrase in Item 5 disposing of the residue to his wife "absolutely as her own and without any restrictions whatever". Both speak from the date of the testator's death and are quite unconditional. Of course, the words "share and share alike" relate only to the equality of the distribution and not its time. There are here no qualifying words, such as "then living", "from and after", or "pay over and divide".

The appellants place their chief reliance upon the words "per stirpes, not per capita". But this phrase has no meaning at all, with regard to named beneficiaries. As was said in *Lycett v. Thomas,* 153 Md. 443, 448: "The words *'per stirpes'* could have no application to the children of the respective life tenants. * * * [They] are naturally applied to descendants, and mean according to stock or by representation." Again it was said (p. 449) : " 'The words *"per stirpes"* are not strictly applicable to named legatees or legatees, designated as a class, and are ordinarily, at least, appropriate, and are used with respect to substitutional gifts to substituted legatees in the case of the death of the primary legatee.' "

Nor is the case altered if we assume that the testator had in mind the descendants of the named legatees. The mere fact that a bequest in remainder is to a named legatee and his descendants, *per stirpes,* would not in itself impose a condition of survival. The cases of *Wilson v. Pichon,* 162 Md. 199, and *Grace v. Thompson,* 169 Md. 653, seem directly in point. Cf. *Robinson v. Mercantile Trust Co.,* 180 Md. 336. See also *Restatement, Property,* § 157, Comments i and j, and *Reno, Future Interests,* 15 Md. L. R. 193.

Since we fully agree with the decision of the Chancellor below, the decree will be affirmed.

*Decree affirmed, with costs.*